By the Court—Hoffman, J.
Previous to the fire causing the damage for which the action is brought, the plaintiff (the assured) had entered into a contract with Strohecker, which was so far executed as, according to the settled doctrine of a court of equity, to make the latter the owner of the property, entitled to its profits, liable for impositions upon it, and subject to any loss which might fall upon it by fire or otherwise. He had gone into possession. He could have been compelled to pay the balance of his purchase money, notwithstanding the destruction of the property. In short, he was the absolute equitable owner in possession, and entitled to the legal title upon payment of $1,500, the unpaid purchase money. (McLaren v. The Hartford Fire Co., 1 Seld., 151.)
By a condition of the Policy, “ in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent,” (the consent of the insurers, manifested in writing,) “this Policy shall from thenceforth be void and of none effect.” Again, “ the interest of the assured in the policy is assignable, provided the consent of the Company be first obtained to the transfer.”
The transfer, by sale or otherwise, indicated in the first clause, is the transfer of the property and the plaintiff’s interest therein; and the object and effect of this and similar conditions is forcibly stated in the late case of The State Mutual Insurance Company v. Roberts. (31 Penn. R., 438.) “The safety of the insurer is dependent much upon the character of the assured—not alone upon his integrity and good faith, but upon his habits of carefulness, prudence and vigilance. It is not the purpose to stipulate for a new contract with the assignee. It is designed, rather, to afford substantial protection to the underwriters, by enabling them to preserve, during the continuance of the risk, the safeguards which existed at its origin—those found in the honesty and watchfulness of the assured.”
There are several cases, some in our own Courts, which bear upon the question.
In Conover v. The Mutual Insurance Company of Albany, (3 Denio, 254, and 1 Comst., 290, on appeal,) the clause of the charter, “ whenever any property insured by this corporation shall be alienated by sale or otherwise, the Policy shall be void," &e., was considered. It was held that a mortgage creating only á lien upon *258 the land was not a violation of the provision. The Company had also given a consent to the assignment of the Policy to the proposed mortgagee. The Judges speak of the alienation mentioned in the act as being an absolute transfer of the title to the property.
In Masters v. The Madison County Mutual Insurance Company, (11 Barb., 624,) the Policy was executed on the 8th of June, 1848, in favor of the plaintiff, for five years. The Policy was subject to the 7th section of the act of incorporation, “ that, where any property insured shall be alienated by sale or otherwise, the Policy should thereupon be void.” On the 15th of March, 1850, a written contract was made by the plaintiff with one Hicks to sell and convey the premises to him, and give him a good deed by the 1st of September ensuing. Hicks was to pay $3,250— $500 to be paid on the 1st of September, and the balance in annual installments of $200 each, to be secured by bond and mortgage. Hicks was given immediate possession, but there was a stipulation that, upon any default in the payments, he was to yield up possession and forfeit the contract.
On the 19th of July, 1850, the property was destroyed by fire. It did not appear that payment had been made of the $500 payable the 1st of September, nor anything else done to carry out the contract. It was held that there was no alienation within the provision of the Policy, so as to defeat the plaintiff’s right to recover.
Hodges v. The Tennessee Marine and Fire Insurance Company, (4 Seld., 416,) amounts to this: That where the assured was the owner in fee at the date of the Policy, and made a deed absolute on its face, but proven (by parol testimony even, there held admissible) to be intended simply as a mortgage, an assignment of the Policy to the mortgagee, with the assent of the Company, entitled the assignee to recover. There is nothing to indicate that the mortgagee went into' possession. The assured retained an insurable interest' at the time of the loss, viz., the equity of redemption. In fact, he remained the owner as to the question of interest in the premises, and the mortgagee had become, with the assent of the insurers, assignee of the Policy, and entitled thereby to recover the amount of the loss.
In Hooper v. The Hudson Fire Insurance Company. (15 Barb., 413, and, on appeal,. 17 N. Y. R., 424,) the Policy contained the same provision as in the present case. The Policy would expire *259 the 18th of March, 1853. On the 21st of June the stock covered by the insurance was sold under execution, and the plaintiff became the purchaser. On that day he applied for and obtained a consent of the Company to the assignment of the policy to him,, without disclosing what interest he possessed. The assignment was made on the 30th of June, and on the 1st of July, 1852,. a portion of the property was destroyed by fire.
These positions were held by the Court of AppealsAfter the sale, and before the assignment of the Policy,, no- recovery could have been had, not because the Pblicy had become void,, but because the insured had suffered no loss, and the owners of the goods (the purchasers, it is presumed) had no claim, for they had no interest in the Policy. The Policy, however, was not extinct, and, being assigned with the Company’s assent, it reattached to the goods.
The proposition of Judge Barculo, in Tillou v. The Kingston Mutual Insurance Company, is recognized in The Buffalo Steam Engine Works v. The Sun Mutual Insurance Company, (17 N. Y. R., 412,) that a transfer of one joint owner to his coo'wner was not within the prohibition of the P’olicy. (Wilson v. The Genesee Mutual Insurance Company, 16 Barb., 511.)
In Dey v. The Poughkeepsie Mutual Insurance Company, (23 Barb., 623,) a transfér of the interest of one of' the parties to the Policy to the other party, and a stranger, by way of general assignment for creditors, was held to be "within an interdiction in the Policy similar- to this. The object of the provision was to protect the Company from controversies- with strangers, or persons other than those with whom they have contracted.
In McLaren v. The Hartford Fire Insurance Company, (1 Seld., 151,) insurance was made by the plaintiff' with the defendant on the 17th of January, 1843, for one year. R. H. Gumming held two mortgages on the premises. He obtained a decree of foreclosure, and the property was sold on the 6th of September, 1843, and purchased by Quackenbush. He paid the deposit required by the terms. Of the purchase money, $12,000 was to be secured by bond and mortgage, and the balance paid on the 1st of October ensuing, or as soon as the decree of sale should be enrolled, when the master’s deed would'be ready for delivery. The purchaser was- to- keep.- the premises insured, and to assign *260 the Policies to protect the mortgagee. A fire occurred on the 11th of October. The decree was not enrolled until the 6th of November, and the deed was then delivered. The Policy con- , tained the usual clause, that in case of any transfer or change “of title in the property insured, the insurance should be void.”
The Court held, “ that the sale under the decree vested a com- ' píete equitable title in the vendee to the mortgaged premises." It was apparent that the transfer of the ownership of the mortgaged premises was within the spirit of the condition of the Policy. Foot, J., said: “Although the naked title may not vest in the purchaser till the deed be given, yet the whole right and interest passes to him immediately on the sale, and he becomes thenceforth the owner. By a decision of the Supreme Court made in 1843, and afterwards affirmed by the Court of Appeals, the master’s sale passed the interest of the parties presently, and the deed when given related back to the time of sale.”
It is of consequence to notice that, in this case, the Policy had been assigned to Gumming to secure payment of the mortgages held by him exceeding the amount insured.
The Court also say, that whether the conclusion they had before stated was so or not, McLaren could not recover without showing a valuable interest in the subject insured.
It is clear that it was considered that his valuable and insurable interest had been extinguished and divested by the sale.
Some authorities in other States may be usefully referred to.
In Powers v. The Ocean Insurance Company, (19 La. R., 28,) under a similar clause, it was held, that where there was a sale and possession, and the property reverted by reason of unpaid purchase money, the Policy was suspended during the possession of the intended purchaser, and revived on the property reverting to the vendor, and possession held by him at the time of the loss.
So in Trumbull v. The Portage County Mutual Insurance Company, (12 Ohio, 305,) it was decided that an agreement for a sale, and part payment of the purchase money, was not a breach of such a condition where the assured remained in possession, and no conveyance was made.
In Norcross v. The Insurance Companies, (17 Penn. R., 429,) the vendee of goods received part of the price, and remained in possession at the time of the loss. He was held to be covered by a *261 Policy made with him before the sale for so much as remained unpaid.
Upon a careful consideration of these authorities, we do not find that an executory contract of the nature of that in question, even when it creates an equitable title, and the intended purchaser is let into possession, is a breach of such a provision of a Policy against alienation without consent, as we find in this case. The mere fact of a change of possession would seem to apply to a lease or mere tenancy, as well as to the present case.
2. The case is then to be considered upon the theory that the contract in question, executed as it was, does not amount to a violation of that prohibition. . .
To my mind, it is clear that the plaintiff could not recover moré than the unpaid purchase money due when the action was commenced.
There must be an insurable interest, not only at the date of. the Policy, but at the time of the loss, to entitle the plaintiff to recover. The plaintiff, although he continued vested with the legal title, retained nothing of an insurable interest in the property, but for the unpaid purchase money. We may treat this interest as continuing. The Policy remained in force pro tanto. By the successive payments, the original entire right in the subject has been abridged and parted with, and the insurable interest diminished. (3 Denio, 305.)
Again: Strohecker obtained, after the contract and possession; an insurable interest in the property, not merely commensurate with his payments as successively made, but for the full value. His actual payments, his liability for the balance, and his title as equitable owner, gave him this right. (The Ætna Ins. Co. v. Tyler, 12 Wend., 507; 16 Wend., 385; McGivney v. The Phoenix Fire Ins. Co., 1 Wend., 85.)
Strohecker, in his own right and as purchaser of the premises, cannot claim the slightest interest in the present Policy. The rights and relations between the plaintiff and defendants cannot, in any mode, directly or indirectly, be affected by anything done or contracted between the plaintiff and him without the Company’s assent. So far as the present case is concerned, the rule remains, as I think, in its absolute force, that “aPolicy of insurance, before a loss, is a chose in action, which is not *262 assignable so as to pass the legal interest.” (3 Denio, 305; 17 N. Y. R., 424.) It constitutes a personal contract between the assured and insurers, in.which three great elements are conspicuous and controlling: an insurable interest in the subject at the time of the loss; a continuing title in the Policy at that time, which will enable the insurers to measure and terminate their liability by dealing with him alone, or in reference to him alone; and the due observance of all the conditions and stipulations of the Policy. To allow that Strohecker got a right which enables the plaintiff to recover any of the insurance money for his benefit, beyond the extent of their own interest, is to make the defendants partially his insurers; to assume the risk of his possible heedlessness or dishonesty, when they had provided for the advantage of the plaintiff’s prudence and integrity. And it may be observed that the reasoning which sanctions the retention of an insurable interest in the plaintiff for unpaid purchase money, is wholly insufficient to warrant an implied transfer of an interest in the policy to Strohecker for any indemnity to him.
I do not think that anything in the cases of Benjamin v. The Saratoga County Mutual Insurance Company, (17 N. Y. R., 415,) or Kernochan v. The New York Bowery Fire Insurance Company, (id., 429,) conflicts with the view I have thus taken. In the former, the mortgagee obtained an insurance as agent of the owners, and apprised the Company of his interest. He foreclosed and became the purchaser, and agreed to convey to Brainard; then the Company agreed that the policy should continue in force until the title was perfected in Brainard, the vendee, he agreeing to pay the premiums, of which the defendants had notice. “ The fair interpretation of the agreement, that the policy should continue valid until the title should be perfected in Brainard, is, that the indemnity should inure to the benefit of Brainard as well as of the plaintiff. To the extent of his equitable interest in the property, the plaintiff is to be regarded as holding the Policy in trust for him.”
The other case seems also distinguishable on various grounds.
When an insurance is made expressly with a mortgagee, the insurer is apprised of the existence of a mortgagor, who he is bound to know is the actual owner, and it may be a presumption that an actual owner is in possession.
*263 Again: The clauses as to a consent for the assignment of the policy, or to an alienation, did not come into consideration in that case.' The bearing of such provisions upon the present case, in any view, has been already stated fully.
The contract was with the mortgagee, explicit and absolute, without regard to the sufficiency of the bond or solvency of the debtor. He had an insurable interest in the property to the amount of the policy, because his interest or his debt exceeded or equaled it. It was an insurance of the property, not of his demand. The Company merely altered a former Policy in favor of Kernochan, by adding the word “mortgagee.”-
The view thus taken involves the result that the judgment was wrong in allowing more than $1,500, the unpaid purchase money, omitting for the present the consideration that this sum has been paid since the action was commenced.
The counsel for the defendants insists, that had they paid that amount, they would have been entitled to resort to Strohecker to recover the unpaid balance from him, upon the doctrine of subrogation.
This rule of subrogation rests upon the foundation of a clear natural equity, and can only exist when it is just, both that the party claiming it should be indemnified, and that the party against whom it is asserted should answer the demand.
When a surety pays the debt, both of these requisites exist. When an underwriter pays a general average, this is equally the case. (16 Wend., 398.) When, as in The Quebec Fire Insurance Company v. St. Louis, (7 Moore’s Pr. Coun. C., 236,) the insurers pay a demand covered by the policy, for which an action could have been sustained against others, whose wrong caused the loss, the rule in its full extent is justly observed.
The French writers are full of disquisitions upon this subject.
In supposed analogy to the rule in marine insurances, the question has been raised and much discussed, whether the insurer against fire, who has paid a loss to the assured, is entitled to all the actions he possessed against tenants, neighbors, &c., under article 1733 of the Code.
The question is presented in two forms: one whether the right of subrogation exists absolutely without agreement or cession, *264 (de plein droit:) the other, when the assured has stipulated to cede, or has actually ceded, such rights.
Article 1733 of the Code gave a right of action to the owner against the tenant for damage caused by fire, unless it arose from inevitable accident, superior force, fault of construction, or was communicated from a neighboring building.
Against an incendiary, or the neighbor in whose building a fire has originated through his fault or negligence, all the writers agree that there is a right of subrogation upon a principle of equity, and the insurer succeeds to the privileges of the assured, The reasoning of M. Pardessus on this point is admitted universally. (Alauzet Traite Des Assurances, tom. 2, arts. 477, 478.)
But it seems to be equally settled that, as between the tenant, responsible under the article of the Code before cited, and the insurer, there is no such right of subrogation given as matter of law:
. The contested point appears to have been, whether the insurer could lawfully stipulate in his policy for the acquisition or cession to him of this right against a tenant. (Grun & Folliat Des Assurances Terrestres, art. 296.)
The discussion of this point is very interesting, and the strength of the argument is, in my judgment, with those who deem such stipulations void. The liability of the tenant is by force of a rigorous law, which great views of public policy dictated, but is often harsh and inequitable in its application. It is a purely personal liability to the owner. There is no mutual engagement of the tenant with the insurer, or joint contract with the creditor. They are strangers to each other. The tenant is no more primarily responsible than the insurer, and, in an equitable view, is less so. The contract of insurance has its full effect between the parties by payment of the damage, and cannot survive to assume a new face against a third person.
It appears, however,.that a decision was given by the Tribunal of Montdidier, and affirmed on appeal by the Court of Amiens, supporting such stipulations, and sustaining an action by the insurers against the owner of an adjoining house in which the fire originated. (Grun & Folliat, p. 247, n.)
Even in this view of the law, we find a substantial distinction between the rule there stated and the present case. The insurer makes it part of his contract that he shall have these privileges, *265 and in that view undertakes the risk and graduates his premium. There was no such, stipulation here. The precepts of equity, so far from approving such a substitution, are hostile to it. “ It would add to the affliction of one, already an innocent victim of misfortune.”
The result is, that the defendants had no right to a subrogation had they paid the $1,500 upon the commencement of the suit.
3. One question remains, viz.: the effect of the payment, during the pendency of the action, of the $1,500, the amount of the purchase money unpaid at its commencement.
It seems to me that the following considerations may dispose of this point. It is perfectly equitable that, as between the plaintiff and Strokecker, the insurance money should goto the latter. Had the Policy been assigned to him after the loss, and before the suit, he could have brought the action in his own name. (Mellen v. The Hamilton Fire Insurance Company, 5 Duer, 101; 17 N. Y. R., 609.) On payment of the note to the plaintiff he could have required an actual assignment of the Policy, and recovered the amount of the insurable interest which the plaintiff had at the time of the loss and institution of the suit. By the agreement between him and the plaintiff, she was to keep the property insured for his benefit; and it is in evidence that he paid the last premium to the plaintiff, which she paid to the defendants in February, 1856, and which continued the Policy in force to the time of the loss. We think that the payment of the remaining debt during suit, coupled with the agreement and payment of the premium, has operated as a virtual equitable assignment of the plaintiff’s interest in the Policy; and as she had a clear right of action at its commencement, we see no reason why the Court should act upon proof of such payment, not even brought before it by any pleading, to defeat what is a just demand against the Company.
The result is, that the judgment must be reversed, and a new trial ordered, with costs to abide the event, unless the plaintiff-consents to a reduction of the amount so as that the judgment shall stand for $1,500, with interest from the 2d of February,
1857, being sixty days after the 4th of December, 1856. If the plaintiff so consent, the judgment will be affirmed for the reduced amount, and reversed as to the residue.
Ordered accordingly.