WILLIAM M. CLINTON, Respondent, *v.* THE HOPE INSURANCE COMPANY, Appellant.

It is not essential to the validity of a contract of insurance, that the person to be insured thereby should be named in the policy. If the name of the person for whose benefit the insurance is obtained, does not appear upon the face of the policy, or if the designation used is applicable to several persons, or if the description of the assured is imperfect or ambiguous, so that it cannot be understood without explanation, extrinsic evidence may be resorted to, to ascertain the meaning of the contract. And when thus ascertained, it will be held to apply to the interests intended to be covered by it; and they will be deemed to be comprehended within it, who were in the minds of the parties when the contract was made.

In 1863, a policy of insurance on real and personal property was issued by the defendant upon the written application of the owner, to another company, and survey annexed thereto. In 1865, R., the insured, having died, his executrix applied, by letter, to the agent of the defendant, with whom the written application above mentioned and survey were filed, for a new insurance upon the same property; and a policy was issued by the defendant insuring "the estate of R." a certain amount upon the factory building and a certain other amount upon the movable machinery therein, as per survey on file at the office of T" the agent. This policy contained clauses avoiding the policy upon any assignment of property without the assent of the defendant, and making the statements in any survey referred to in the policy, warranties by the insured. Also, a clause that the policy was made with reference to "a survey on file in this office."—*Held*, in an action upon the policy, that any application and survey must have been on file in the office of the company to be effectual as forming a part of the second contract of insurance. The survey on file in the office of the agent, could only be used as a convenient method of identifying the articles of machinery covered by the policy. It did not make the other statements, found in it, a part of the new contract of insurance.

The party to a contract who seeks to destroy its obligations by reason of an alleged breach of a condition precedent by the other party, cannot establish the existence of such a condition by inference or conjecture. The terms of the contract must be clear and explicit in his favor.

The mother and the guardian of certain infants made a contract to sell real estate and personal property belonging to them, as soon as the guardian could obtain the requisite authority from the court. This property had been insured for the benefit of the " estate." The vendee entered into possession as tenant, paying rent. Much of the property was destroyed by fire before the contract was consummated. None of the papers or orders were filed until after the fire. After that event, a new contract was entered into between the same parties, the vendee purchasing the real estate and the claims for insurance, and taking a deed,—*Held*, that the vendee, by the first contract, acquired no title to the property, and by his second contract, the claims to recover the amount insured were not extinguished.—*Held*, further, that the destruction of the property, which fixed the liability of the insurers, at the same time discharged the vendee from his obligation to purchase; and, therefore, that the insurers could not be subrogated to that obligation to the extent of their liability for the insurance.

(Argued March 23d; decided April 4th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the sixth judicial district, affirming the judgment rendered upon a verdict for the plaintiff. Recovery, $3,366.52.

This action was brought upon a fire insurance policy, issued by the defendant on the 27th of February, 1865, insuring the " estate of Daniel Ross " for one year to the amount of $3,000 against all loss by fire on the New Berlin cotton mill and the fixed and movable machinery therein. The mill was destroyed by fire June 28th, 1865, and due proof of loss was furnished. The claim was assigned to the plaintiff.

The insured property was owned by Daniel Ross until his death. The defendant had previously, in 1863, insured the property, making a written application of Ross and a survey, which was on file with the agent of the company at Utica, a portion of the policy. The home office of the company was at Providence, R. I., where the policy was issued. In July, 1864, Ross died intestate, leaving a widow and three children all under age. The personal estate of the deceased was more than sufficient to pay all his debts. In August, 1864, letters of administration were duly granted to Mrs. Ross. This insurance, among others, was applied for by her in behalf and

for the benefit of the widow and children, she paying the premiums out of moneys belonging to the estate. The defendant's agent issued and sent policies of various companies, and among others the one in suit, in all for $23,000. The plaintiff gave evidence to show that the intention of the parties was to effect an insurance upon both real and personal property for the benefit of the widow and children. The expression in the policy was "the estate of Daniel Ross." The mill was not working at the time of the insurance, but the insured had permission to run it, which permission was indorsed in red ink by the agent on the margin of the survey on file at the office of such agent. April 1st, 1865, Henry Tew was duly appointed general guardian of the three children. May 25th, 1865, a petition was presented to, and an order made by the court, for the appointment of Tew as special guardian, in proceedings for the sale of the infants' real estate, upon his giving the required surety. A referee was appointed, but he was not to proceed until the production of the clerk's certificate of the filing of the security. May 29th, 1865, the widow and Tew, as guardian of the infants, together with the plaintiff, executed a written instrument bearing that date, whereby Tew, under an order of the court yet to be obtained, promised to sell as special guardian, the widow releasing her dower right to the plaintiff, the factory, farm, buildings, etc., owned by deceased Ross at his death, when the order for that purpose could be obtained from the court. The plaintiff to pay $22,000, besides reimbursing the insurance premiums from May 29th, 1865; $500 to be paid down; and was to assign and guaranty a mortgage for $4,500; and on delivery of the deed, to execute a bond and mortgage on the premises for $16,000, the factory and machinery to be kept insured by him. He was to have immediate possession and to have all the personal property in the factory, but was to hold and possess the factory and premises, machinery and property, as the tenant of the estate, until the deed was executed and delivered, and at the rate of $1,500 a year rent. June 3d, 1865, the referee's report, dated May 31st, was pre-

sented to the court, and it thereupon made an order authorizing Tew to sell, upon the plaintiff complying with the conditions of his agreement. None of these papers were filed or orders entered until the 13th of November, 1865. On May 29th the plaintiff entered into possession. Nothing was done under the contract of May 29th, after the fire, except to pay the rent provided for. On the 4th of November there was assigned to the plaintiff the claim against the defendant for loss by fire, and a deed and release of the real estate.

Upon the trial, at the close of the proofs, the defendant's counsel moved for a nonsuit. The court denied the motion, and ruled that the only application for this policy was oral or by letter, and that no survey proved should be deemed referred to in the policy so as to constitute a warranty by the assured; that the estate had and continued to have an insurable interest in the property insured at the time the policy was issued, and at the time the property was destroyed; that the plaintiff was in possession of the insured property as tenant at the time it was destroyed and no title vested in him until the conveyance in November, and that the right of action was not destroyed by the plaintiff taking that deed, or on his paying the sum named in the contract. The case is reported below. (51 Barbour, 647.) The references to the applications and survey contained in the policy are stated in the opinion.

*E. G. Lapham* and *Samuel Hand*, for the appellant, on the question of the effect of the survey, cited *Chaffee* v. *Cattaraugus Mut. Ins. Co.* (18 N. Y., 376); *Ripley* v. *The Ætna Ins. Co.* (30 N. Y., 136); *Gates* v. *Madison Co. Ins. Co.* (2 N. Y., 43); *Burritt* v. *The Saratoga Mut. Ins. Co.* (5 Hill, 191); *Murdock* v. *Chenango Mut. Ins. Co.* (2 N. Y., 210); *Smith* v. *Empire Ins. Co.* (25 Barb., 479); *Le Roy* v. *Market Ins. Co.* (39 N. Y., 90). It makes no difference, that the application or survey was made on a former occasion, and to a different company.

The administratrix had no insurable interest in the property insured. (*Herkimer* v. *Rice*, 27 N. Y., 163; *Colburn* v. *Lansing*, 46 Barb., 37); *Phelps* v. *Gebhard Fire Insurance Co.*, 9 Bosw., 411; *Beach* v. *Bowery Insurance Co.*,

8 Abb., 261, note.)   The party insured must have an insurable interest in the property, both at the date of the policy and at the time of the loss, or no recovery can be had. (*Fowler* v. *Washington Ins. Co.*, 26 N. Y., 422; *Freeman* v. *Fulton Ins. Co.*, 14 Abb., 398; *Howard* v. *Albany Ins. Co.*, 3 Denio, 303; *Grosvenor* v. *Atlantic Ins. Co.*, 17 N. Y., 392.)   The sale of the infant's real estate was a judicial sale, and the deed related back to the time when the contract of sale was confirmed by the court. (*McLaren* v. *The Hartford Ins. Co.*, 1 Seld., 151; *Gates* v. *Smith*, 4 Edw. Ch., 702; Dart on Vendors, 560.)   The purchaser could insure the full value of the estate purchased, the estate of Ross, only for the unpaid purchase-money. (Angell on Ins., § 66; Digest Ins. Decis., 392, § 9; *Mason* v. *Salsbury*, 3 Doug., 61; *Hart* v. *W. R. R. Co.*, 13 Met., 99; *Ætna Ins. Co.* v. *Tyler*, 16 Wend., 385.)   In no event could the plaintiff recover any greater amount than the administratrix could have recovered if she had not assigned the policy.   (*Grosvenor* v. *Atlantic Ins. Co.*, 17 N. Y., 395; *Carpenter* v. *P. & W. Ins. Co.*, 16 Peters, 495; *Foster* v. *Equitable Ins. Co.*, 2 Gray, 216.)

*J. E. Dewey*, for the respondent.   The widow's interest was only a claim of dower; it would not pass even by her deed.   (*Tompkins* v. *Fonda*, 4 Paige, 448; *Stewart* v. *McMartin*, 5 Barb., 438, 446; *Moore* v. *The Mayor*, 4 Seld., 113; *Lawrence* v. *Miller*, 2 Comst., 254; *Ash* v. *Cook*, 3 Abb., 389; *Siglar* v. *Van Riper*, 10 Wend., 414, 419; *Scott* v. *Howard*, 3 Barb., 319.)   The common-law fixes the risk, where the title resides.   (*Joyce* v. *Adams*, 4 Seld., 296, 297.)   If there be a condition precedent to the passing of title, no title vests in personal property, until condition performed.   (15 N. Y., 409; 26 N. Y., 599; 47 Barb., 646; 4 Seld., 271; 1 Abb. N. S., 349; 2 Hill, 326; 6 Barb., 362.)   On the question of the contract of sale, see *Williams* v. *Fitch* (18 N. Y., 548); *Kimberly* v. *Patchin* (19 N. Y., 335); *Langley* v. *Warner* (3 N. Y., 329); *People* v. *Ransom* (2 Hill, 53); *Ex parte Newell* (4 Hill, 610); *Evertson* v. *Evertson* (5

Paige, 649) ; 24 N. Y., 392, 393. The policy was issued on mere request, and not connected with any survey. On this question, see 7 Hill, 124 ; *Mellen* v. *The Hamilton F. Ins. Co.* (17 N. Y., 615) ; Ang. on Ins., § 141 ; 14 N. Y., 262, 263 ; 17 N. Y., 195, 197 ; 14 Barb., 383, 385 ; 32 N. Y., 405. The survey must be construed most strongly against the insurer. (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y., 405 ; *Springsteen* v. *Janson*, 32 N. Y., 703 ; *Rapelle* v. *Stewart*, 27 N. Y., 315.) Contracts of insurance must receive a liberal construction for the attainment of the ends which the parties had in view. (*Howard* v. *Albany Ins. Co.*, 3 Den., 304 ; *White* v. *H. R. Ins. Co.*, 15 How., 288 ; *Springsteen* v. *Janson*, 32 N. Y., 703 ; 17 N. Y., 426 ; 17 N. Y., 198.) The policy is broad enough to cover not only the legal, but the beneficial interest. (*White* v. *H. R. Ins. Co.*, 7 How., 349, 350 ; *Hoffman* v. *Ætna Ins. Co.*, 32 N. Y., 405 ; 17 N. Y., 198.) Evidence may be introduced to show whose interest was intended to be insured. (*Bidwell* v. *N. W. Ins. Co.*, 24 N. Y., 302 ; *Blossom* v. *Griffin*, 3 Kern., 569 ; *Bidwell* v. *N. W. Ins. Co.*, 19 N. Y., 182, 183 ; 17 N. Y., 428, 433, 434 ; 2 Sandf., 497 ; Ang. on Ins., § 99.) The assured had a right to rent out of the assured property. (*Gates* v. *M. M. Ins. Co.*, 1 Seld., 478 ; Ang. on Ins., §§ 169, 171 ; *O'Neil* v. *B. F. Ins. Co.*, 3 Comst., 122 ; 32 N. Y., 399.) A contract to sell the insured property at a future time, is not such an alienation as is prohibited by the policy. (Ang. on Ins., §§ 195, 206, 210 ; *Ballard* v. *Burget*, 47 Barb., 646 ; *Ætna Ins. Co.*, v. *Taylor*, 16 Wend., 395, 396 ; *Masters* v. *Mad. Mut. Ins. Co.*, 11 Barb., 624.) All the facts were known to defendants' agent ; he made the policy, and they (the company), are estopped, no fraud being shown. (*Rowley* v. *Empire Ins. Co.*, 36 N. Y., 550 ; *Masters* v. *Mad. Ins. Co.*, 11 Barb., 625 ; 1 Daly, 8 ; 14 N. Y., 253, 263, 264 ; 18 N. Y., 392, 394 ; 34 Barb., 213, 215 ; Ang. on Ins., §§ 191, 470.)

ANDREWS, J. The contract of fire insurance is one of indemnity, and no recovery can be had upon it, unless the

assured had, at the time of the insurance and of the loss, an interest in the insured property.

It is claimed by the defendant that the contract upon which this action is brought was made by the company with the administratrix of Daniel Ross, and in respect to her interest in the insured property, and that no recovery can be had for the loss of the mill mentioned in the policy, for the reason that the administratrix, as such, had no insurable interest therein.

If the premises upon which this claim of exemption from liability is based are true, the recovery cannot be sustained.   An administratrix takes the legal title to the personal property, but she has no estate in the real property of the intestate.

It was held in *Herkimer* v. *Rice* (27 N. Y., 163), that when the personal estate of an intestate was insufficient to pay his debts, the administrator had an insurable interest in the buildings upon the land of the deceased, on the ground that he is a trustee of a power to sell the land upon the order of the surrogate for the benefit of creditors, and that as the interest of creditors is the subject of insurance the administrator may insure for their benefit.

It is admitted in this case that the personal estate of the intestate was more than sufficient to pay his debts, and the administratrix had, therefore, no interest in the real estate to support a contract of insurance. The defendant, by the policy in question, undertook to insure " the estate of Daniel Ross " against loss or damage by fire, upon property described as a cotton mill building, and the fixed and movable machinery therein.

The person or persons to be insured are not named in the policy, nor is this essential to the validity of the contract of insurance.

If the name of the person for whose benefit the insurance is obtained does not appear upon the face of the policy, or if the designations used are applicable to several persons, or if the description of the assured is imperfect or ambiguous, so that it cannot be understood without explanation, extrinsic evidence may be resorted to, to ascertain the meaning of the

contract; and when thus ascertained, it will be held to apply to the interests intended to be covered by it, and they will be deemed to be comprehended within it who were in the mind of the parties when the contract was made. (1 Phil. on Ins., 163; *Colpoys* v. *Colpoys*, Jacob., 451; *Burrows* v. *Turner*, 24 Wend., 277; *Davis* v. *Boardman*, 12 Mass., 30; *Newson's Adm'rs* v. *Douglass*, 7 H. & John., 417.)

The evidence leaves no doubt as to the persons intended by the designation "the estate of Daniel Ross."

The agent of the defendant, to whom the application was made, was informed that the insurance was desired for the benefit of the widow and heirs of Daniel Ross; the policy was subsequently issued by him, and the language used to designate the assured was inserted by him without instructions from them.

Under these circumstances, the rule of construction to which we have referred has a direct application.

It is insisted, however, that the words "estate of Daniel Ross" have a definite legal signification, meaning his administratrix, and that the policy is to be construed in the same manner as though she was named as the person assured thereby.

This position has some support in the remark of DENIO, Ch. J., in *Herkimer* v. *Rice*, to the effect that in common parlance and in legal language, when the estate of a deceased person is spoken of, the reference is to his effects in the hands of his executor or administrator. In that case the question was as to the right of the administrator and the creditors of the intestate on the one side, and the heirs upon the other, to certain money recovered upon policies of insurance upon the buildings on the land of the intestate, issued directly to the administrator or renewed upon her application. The renewal receipts stated the premium to have been received of the estate of the intestate. In fact the policies were renewed upon the application of and for the benefit of the administratrix and the creditors, and the court gave effect to the contract according to the intention of the parties.

This case is not, we think, an authority for the claim made by the defendant. The words used in this policy were intended to designate the persons holding the legal title, and to speak of the property left by a deceased person, including the real property, especially before final settlement of his affairs, as his estate, if not an accurate, is not an unusual designation.

We are of opinion that the interests, both of the administratrix and of the heirs, in the insured property were covered by this policy. (1 Phil. on Ins., 106; *Higginson* v. *Dale,* 12 Mass., 96.)

It is claimed on the part of the defendant that the policy in question was issued upon an application and survey made in 1863 by Daniel Ross to the Home Insurance Company, for an insurance upon the same property covered by this policy, and that that application and survey, by the terms of the policy, were referred to and made a part of it, so as to bind the assured by the statements contained therein as warranties, except as they were modified by the indorsement made by the agent of the defendant.

In that application and survey, it was represented that there was but one building within one hundred feet of the mill. In fact, when the policy was issued, there was, and had been for some years, several buildings within that distance. There were other statements in the application and survey which were untrue as applied to the time when this policy was issued. If this survey was made a part of the contract, the policy never attached, as the truth of the statements in the application and survey was a condition precedent thereto. The court held that this application and survey was not a part of the policy, and excluded that question from the consideration of the jury.

In the printed part of the policy it is provided as follows:

"This policy is made and accepted in reference to the survey on file at this office and the conditions hereto annexed, which are to be used and resorted to in order to explain the

rights and obligations of the parties hereto in all cases not herein otherwise especially provided for."

And one of the conditions referred to, after specifying what the application must contain, including among other things a specification of the situation of the property to be insured, with respect to contiguous buildings, declares " that if any survey, plan or description of the property herein insured is referred to in this policy, such survey, plan or description shall be deemed and taken to be a warranty on the part of the assured."

The attestation clause recites that the "Hope Insurance Company have caused these presents to be executed by their president and attested by their secretary, at their office in Providence, R. I."

It is apparent from these provisions, that it was the practice of the company to require a specific written application and survey, to be made by the applicant, to accompany his proposition for insurance, and that the survey referred to in the condition is the survey mentioned in the body of the policy as on file in the office of the company, and which was the basis of the contract of insurance.

The provision, however, requiring a written application by the person seeking insurance, was introduced for the benefit of the defendant, and if the company issued a policy without requiring it, the contract would take · effect as though no reference thereto had been made.

In this case, no written application was made by the assured, nor was any application, relating to an insurance on this property, on file in the office of the defendant.

The application and survey made by Daniel Ross in 1863, which enumerated the articles of machinery in the mill, was, at the time of the insurance, in the possession of the agent of the defendant at Utica, where it had been from the time it was made.

In the part of the policy which describes the property insured, this survey is referred to as follows: "$2,165 on

movable machinery therein, as per survey on file at office of M. H. Thomson, at Utica, N. Y."

This reference to the survey of. 1863 cannot, we think, be regarded as the survey mentioned in the printed clauses of the policy.

It was a convenient method of identifying the articles of movable machinery covered by the policy, but it did not make the other statements therein a part of the contract.

This survey was not, and had not been, on file in the office of the defendant. Nor does the evidence in the case furnish any ground for the inference that the parties understood that the survey of 1863 was to stand as the application for this insurance. It does not appear that the assured had any knowledge of the statements it contained; nor are they chargeable with notice of them.

The parties could have made that survey, for all purposes, a part of the contract, but this intention is not apparent upon the face of the instrument, nor is it established by extrinsic proof.

The party to a contract who seeks to destroy its obligation by reason of an alleged breach of a condition precedent by the other party, cannot establish the existence of such a condition by inference or conjecture. The terms of the contract must be clear or explicit in his favor.

There was no error in the ruling of the court that the survey of 1863 was not a part of the contract between the parties.

It remains to consider the effect of the contract for the sale of the insured property, made by the assured after the policy was issued. When the insurance was effected the heirs of Daniel Ross were the absolute owners of the land, and had an insurable interest in the buildings thereon commensurate with their full value. They were insured as owners, and such premium was exacted by the defendants as was deemed equivalent to the risk assumed.

The contract of May 29, 1865, was an entire contract for the sale, for a gross sum, of the mill and the machinery

therein.  It was not obligatory upon the infant heirs, as · no order for the sale of their estate had been procured, and their general guardian had no power to contract for the sale in their behalf.  It did not become mutually obligatory until confirmed and approved by the court by the order of June 3.

The vendee took possession of the property immediately after the contract was executed under the provision therein giving him immediate possession, and declaring that he shall hold the land and personal property as tenant of the estate at a fixed rent, until the deed should be executed and delivered.

The vendee paid $1,500 when the contract was executed, and remained in possession without any new contract, until the fire which destroyed the property.

It is now claimed on the part of the defendant, that by the contract of sale the vendee became the equitable owner of the land, and trustee for the vendors of the purchase-money, and that the contract of insurance became from that time an indemnity for the payment of the unpaid purchase-money, and a mere insurance of the debt owing to the vendors to the extent of the policy.  It is then insisted that this relation between the parties to the contract of insurance, entitled the defendant, on payment of the loss, to be subrogated to the extent of such payment to the claim of the vendors for the purchase-money on the contract, and that the transaction in short was a complete execution of the contract of purchase, and extinguished the liability of the defendant on the policy.  The general rule is, that the vendee in a contract for the sale of land, is entitled to any benefits or improvements happening to the land after the date of the contract, and must bear any losses by fire or otherwise, which occur without the fault of the vendor.  (Dart on Vendors, 116; 1 Sug. on Vendors, 468; *Paine* v. *Miller*, 6 Ves., 349.)  Nor, it seems, is he entitled to the benefit of an insurance obtained by the vendor on his own account, and held for his own benefit.  (*Shotwell* v. *The Jefferson Ins. Co.*, 5 Bosw., 261; and see *Ins. Co.* v. *Updegraff*, 21 Pa. St., 513.)

And in case of loss by fire, when such an insurance exists, it was said by the chancellor, in *Tyler* v. *Ætna Ins. Co.* (16 Wend., 385), in analogy to the rule in case of insurance upon the interest of a mortgagee, that the insurer, on payment of the loss, is entitled to be subrogated *pro tanto* to the rights of the insured in the unpaid purchase-money.

Without conceding the correctness of this doctrine, we think that this case is not within it. The contract of sale was entire. The value of the machinery and personal property formed the principal part of the purchase-money. The mill was useless, as such, without machinery; and it may be assumed that neither the real nor personal property would have been purchased separately. ·

The title to the personal property did not pass by the contract. By the agreement of the parties, the vendee, at the time of the fire, held it as tenant. When it was destroyed by the fire, it was the property of vendors in the contract; and the loss was theirs. (*Herring* v. *Hoppock*, 15 N. Y., 409; *Hasbrouck* v. *Lounsbury*, 26 N. Y., 599.)

They were disabled to perform the contract in respect to the personal property, nor could they, under the circumstances, compel the vendee to accept a partial performance on their part, and require him to take the land. (*Bacon* v. *Simpson*, 3 Mees. & W., 78.)

The same event, therefore, which fixed the liability of the defendant to pay the insurance, discharged the vendee from the obligation to pay the debt, to which the defendant claims to be subrogated. Manifestly there was then no right of subrogation. Nor can the transaction, in November, when the deed was delivered and the payment made, be regarded as an election by the vendee to perform the contract of May 29.

The payment was made, not alone in consideration of the delivery of the deed, but also of the assignment of the claims against the insurance companies. If, however, the contract of sale was in full force after the fire, the defendant was not entitled to subrogation to the claim of the vendors.

The original undertaking by the defendant was an insurance of the owner's interest in the property.

By the contract of sale, the vendee agreed to repay the vendor the unearned portion of the premium on the policy in question, and to keep the premises insured for the protection of any mortgage he should give on the consummation of the sale.

The undertaking, by the vendee, to pay the cost of the insurance, was, under the circumstances, equivalent to an agreement on the part of the vendor, to hold the insurance for the protection of the joint interests of the parties, and created a privity between them in respect to the contracts of insurance. There can be no other reasonable construction of the transaction.

In substance, this insurance was furnished by the vendor as an additional security for his debt.

If, as between the parties to the contract of sale, the vendee was entitled to the benefit of the insurance moneys in case of loss, the defendant can assert no equity in hostility to that arrangement.

The equity of the defendant is the equity of the vendors; and an arrangement between the vendors and vendee, in respect to the application of the proceeds of the insurance, did not violate any contract between the insurer and insured.

The defendant, upon payment of the indemnity promised, simply performs his contract. (*Kernochan* v. *The N. Y. Bowery Fire Ins. Co.*, 17 N. Y., 428; *Insurance Co.*, v. *Updegraff*, 21 Pa. St., 513.)

The judgment should be affirmed.

All concurring, judgment affirmed.