[No. 530. Decided July 7, 1892.]

THEODORE CUSHING AND T. R. NICKALLS, *Respondents*, v. THE WILLIAMSBURG CITY FIRE INSURANCE COMPANY, OF BROOKLYN, NEW YORK, *Appellant.*

THEODORE CUSHING AND T. R. NICKALLS, *Respondents*, v. THE AMERICAN INSURANCE COMPANY, OF BOSTON, MASSACHUSETTS, *Appellant.*

INSURANCE—INSURABLE INTEREST—PROOF OF LOSS—WAIVER.

In an action upon a fire insurance policy brought jointly by the owner and the contractor of a building in course of erection, and asking a reformation of the policy on the ground of mistake in that the owner's name had not been included as a party insured, the refusal of the court, on a finding that there had been no mistake, to absolutely dismiss the complaint, is not error.

Where a building contract provided that the contractor should keep the building insured with builders' risks until the written acceptance of the building by the architects, the policy to be paid for

by the contractor and filed in the office of the architects, and another clause provided that he should be "held liable for all damages, real or constructive, caused by his neglect, carelessness or want of ordinary skill and judgment," the failure of the contractor to insure in favor of the owner rendered him liable to rebuild or pay damages, and accordingly he had an insurable interest in the full value of the building.

The fact that the adjuster of a fire insurance company was present on the ground after a fire taking affidavits in regard to the loss is a waiver of the proof of loss required by the terms of the policy.

Where a policy is issued upon credit for the premium, the premium becomes a mere debt, and its non-payment does not vitiate the policy.

*Appeal from Superior Court, Spokane County.*

*Thomas C. Griffitts,* for appellants.

*Norman Buck,* and *Nash & Smith,* for respondents.

The opinion of the court was delivered by

STILES, J.—Each of the appellant companies was sued for $2,000 upon its policy of insurance, and the pleadings, facts and counsel being the same in each, the cases were tried and are appealed as one.

The complaints show that respondent Nickalls was the contractor with Cushing for the erection of a certain building upon land owned in severalty by him and two other persons for a gross sum of about twenty-six thousand dollars, and was bound to keep the building insured by a builder's risk. The sixth paragraph alleged knowledge on the part of the insurers of the relations between Nickalls and Cushing. The eighth paragraph showed how much money had been expended on the building at the time of the fire, how much Nickalls had received from Cushing on the contract price, and how much the salvage was. The ninth paragraph alleged a refusal to pay the loss, on the ground that as the policy had been made out in the name of Nickalls, without mention of Cushing, and as Nickalls had been paid all but a small portion of his outlay on the

building, no more than the balance due him from Cushing was insured. The eleventh paragraph was as follows:

"It was distinctly understood between plaintiffs and defendant at the time said policy of insurance was contracted for, as above stated, and at the time the same was signed by defendant, that it was taken out for mutual benefit of plaintiffs Cushing and Nickalls, as their interests should appear in said building, and that said Nickalls contracted for the same with defendant with such understanding, and that defendant issued and delivered the same to said Nickalls with such understanding."

The other paragraphs were appropriate to the nature of the actions. The prayers of the complaint were that the policies might be reformed so as to include Cushing as a party insured with Nickalls, and for judgment for the full amount of the policies. The court found that there had been no mistake, dismissed as to Cushing, and rendered judgment for Nickalls for the full sums claimed. The companies appeal.

The first error assigned is that alleged to have been made by the court's refusal to dismiss absolutely upon the finding that there had been no mistake, and that there was therefore no ground for a reformation, and no jurisdiction in equity. The complaints were not addressed to the judge of the court, and but for the payer for reformation they would not be taken to be anything other than ordinary pleadings at law. Reformation was not necessary to Cushing's right to sue, if, in fact, Nickalls' insurance was for his benefit. He could adopt the act of his agent and sue in his own name. Wood on Insurance, § 136. Courts of equity are often appealed to to correctly declare the terms of contracts as they were actually agreed upon between the parties to insurance policies, where the writings executed do not truly state them. But courts of law do not, in some of the states, require a resort to equity to correct a mere mistake, but allow proof of the mistake and proceed

with the case. 2 May on Insurance, § 566; *Manhattan Ins. Co. v. Webster*, 59 Pa. St. 227; 98 Am. Dec. 332, *Clinton v. Hope Ins. Co.*, 45 N. Y. 454. Although counsel have devoted very great industry to the preparation of the case here upon this point, we can find nothing in the complaint which requires the application of equity rules or practice to it.

But the court below held that Nickalls was the owner of the building, and inferentially that Cushing had no interest which was covered by the policies, and therefore that Nickalls was not Cushing's agent. This conclusion is the next and the principal error assigned. We agree with the finding of the court below that there was no mistake, and that it was proper for it to proceed, under the stipulation, to try the case without a jury. Nickalls' right to maintain the actions depends on the policies and the facts in regard to ownership or insurable interest. The agent of the companies is clearly shown to have been aware of the relations of Nickalls and Cushing in their general terms, though not of the precise stipulations in their contract. The specifications annexed to the contract contained the following:

"The contractor is held liable for all damages, real or constructive, caused by his neglect, carelessness or want of ordinary skill and judgment. He is not liable for loss or damage to the building caused by extraordinary natural occurrences, such as are commonly understood as being wholly beyond all human control, or by fire. But the building is to be kept insured with builder's risks from date of framing first floor joists until the written acceptance of the building by the architects. The policy to be issued by the Pacific Fire Insurance Company, of Portland, Oregon, and to be taken out and paid for by the contractor and filed in the office of the architects."

Cushing talked with the agent about the insurance, and Nickalls was sent for to assent to the issuance of policies for $10,000 in five companies. The agent's statement of their requirements is that "they wanted Nickalls to have a build-

er's risk insurance;" and he directed his clerk to write policies accordingly. This was done, but before the policies were delivered the fire occurred.

The next question is, what would be Nickalls' right under such a policy in view of his building contract. The contract expressly relieved him from liability for damage to the building by fire; but he was to insure against fire. We think the most reasonable interpretation of the insurance clause would be that the policies he was to take out and deposit with the architects should run to Cushing, and had he complied with that interpretation doubtless he would have been required neither to rebuild nor to pay damages. But had he procured no insurance whatever, it must certainly be conceded that he would have been held for all the loss occasioned to Cushing by the fire; for although his exemption from liability was not in words, conditioned upon his procuring insurance, such must be the only reasonable interpretation of the words used. Now, as a matter of fact, he did not fulfill the obligation upon him to insure in favor of Cushing, but did insure in his own favor, as the appellants have successfully asserted and maintained. What, then, were the relations of the two men before and at the time of the loss? Clearly Nickalls must rebuild or pay the damage, for his contract then stood as though all reference to fire and insurance had been omitted from it, and nothing had been done toward erecting the building stipulated for. Thus regarded, we think there can be no question that upon the facts Nickalls had an insurable interest to the full value of the building, which he was entitled to recover for; and if, as seems to have been the case, certain iron which had been furnished by Cushing for the construction of the building, had been built in and was destroyed, Nickalls could also recover for that, as he was obliged to replace it. Wood on Insurance, §§ 281-2, 296-9, 312.

The objection made that proofs of loss were not furnished as required by the policies, seems to be based principally upon the idea that there could be no lawful proof of loss unless it was made upon the printed blanks furnished by the companies, which can hardly be conceded.     The fact is that these companies were bodily present in the city of Spokane Falls for weeks after this fire, in the person of their adjuster, Mr. Dick, doing nothing else but taking proofs of loss.     In this case, instead of using the ordinary blanks, he took affidavits, and put the insured through a long cross-examination, which was reduced to writing and verified, and had copies of the building contract, and terminated the proceedings by announcing a refusal to pay anything except these companies' proportion of a loss of about $1,000, admitted to have been suffered by Nickalls although he conceded that the actual loss was more than the full amount of the insurance.     In the first place, there was a substantial proof of loss made; and, secondly, the action of the adjuster was a waiver of the former proof, which was sufficiently pleaded.     *Home Ins. Co. v. Myer,* 93 Ill. 271; *O'Brien v. Ohio Ins. Co.,* 52 Mich. 131; *Ætna Ins. Co. v. Shryer,* 85 Ind. 362.

There was an agreement to issue the policies between the agent and the assured, upon the usual thirty days' credit for the premium, and the policies were written out for delivery, and somehow got into the hands of the assured after the fire, though it is not exactly clear just how it came about; it cannot, therefore, be a ground of objection that there was no delivery.     The contract having been made orally, equity would compel the execution of the written agreement, or law would render judgment upon the oral contract without any writing.     *Gerrish v. German Ins. Co.,* 55 N. H. 355.

Whether there was a sufficient tender of the premium to excuse payment or not, its non-payment could not vitiate

the policies.   Time was given, and the premium became a mere debt, for which the companies were entitled to a set-off, which was allowed.   Wood on Ins., § 30; *Church v. La Fayette Ins. Co.*, 66 N. Y. 222.

The judgments should, therefore, be affirmed, and it is so ordered.

ANDERS, C. J., and HOYT, DUNBAR, and SCOTT, JJ., concur.