[No. 5359.    Decided January 5, 1905.]

JAMES HENRY, *Respondent*, . v. AETNA INDEMNITY COMPANY, *Appellant.*[1]

INDEMNITY—BOND GUARANTEEING BUILDING CONTRACT—NOTICE OF ACTS INVOLVING LOSS—WAIVER. Where an indemnity bond guaranteeing a building contract stipulated for notice to the surety of acts which "may involve loss," the failure of the owner to notify the surety that the contractor had failed to meet payments for labor and material will not avoid the bond, where the agents of the surety gave the owner the first notice thereof, and requested payments thereafter to be made through them, and where the general agents had notice of this course, since the notice is thereby waived.

SAME—JUDGMENT AGAINST PRINCIPAL—NOTICE TO THE SURETY TO DEFEND—ESTOPPEL. Where a surety company guaranteed, by the bond, the faithful performance of a building contract in which the contractor agreed to furnish all the material, and is given due notice to defend an action commenced by materialmen to foreclose a lien for material furnished to the contractors, a judgment obtained in good faith against the contractors, the principals in the bond, establishing the claim and foreclosing the lien, is binding upon the surety, to the same extent that it

[1]Reported in 79 Pac. 42.

binds the contractors, and, in an action on the bond, estops the surety company from claiming that there was no breach of the contract.

SAME—LIMITATION OF ACTIONS. An action upon an indemnity bond guaranteeing a building contract, which required suit to be brought within six months of the first breach of the contract, is commenced in time if within six months of the time the building was to be completed, and within six months of the plaintiff's knowledge of any breach of the contract.

Appeal from a judgment of the superior court for King county, Griffin, J., entered December 18, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action upon an indemnity bond. Affirmed.

*Root, Palmer & Brown,* for appellant.

*James B. Murphy,* for respondent.

HADLEY, J.—This is an action upon a contractor's indemnity bond. The complaint shows that the contract price for the construction was $5,940, and avers that the contractor violated the terms of the contract by failing to pay the claims for labor and material which entered into the construction, and thereby allowing such claims to be assessed against the property to the extent of $3,314.06 in excess of the contract price. It is also averred that, immediately after such default became known to the property owner, he duly notified the surety company thereof, and demanded that it pay, or cause to be paid, the asserted demands, and should save him harmless therefrom. Demands, as asserted in various filed lien notices, are set out, and it is alleged that suits were brought to foreclose the same; that immediately thereafter the property owner notified the surety company in writing thereof, tendered it the defenses to said actions, and demanded that it should defend the same, and save the owner harmless from the ex-

pense of such defenses; that the surety failed and refused
to interpose any defenses, or to assume any expense in
connection therewith; that the owner was compelled to
employ counsel and interpose defenses to said actions, and
that he did all that could properly be done to protect the
premises against said claims; that said actions were tried
and resulted in judgments establishing the liens, together
with attorney's fees and costs, aggregating the sum of
$3,746.04; that the owner was thereupon compelled to pay,
and did pay and satisfy, said judgment liens, and that he
also incurred an additional expense of $200 as attorney's
fees in the defense of said actions.  It is further alleged
that, before the last payment under the building contract
was made, the surety company, through its duly author-
ized agents, requested that payments under the contract
should be made to said agents, and that, for some time
prior to the completion of the building, said agents received
the money due the contractor, and disbursed it in satis-
faction of claims against the building as the surety com-
pany directed, all with the consent of the contractor.  The
answer denies, generally, the material averments of the
complaint, and affirmatively alleges that this action was
not brought within six months of the contractor's default,
as required by the terms of the bond.  The cause was tried
by the court without a jury, and resulted in a judgment
against the surety in the sum of $4,165.07, and for costs.
The surety company has appealed.

Several assignments of error relate to the same general
subject and will be discussed together.  The local repre-
sentatives of appellant in Seattle were Calhoun, Denny &
Ewing, while its general agents were Clemens & O'Brien,
located in Portland, Oregon.  It is urged that the court
erred in admitting evidence tending to show that the local
representatives waived conditions in the bond, and in hold-

ing that their acts were binding upon appellant. The bond provides that the surety company shall be notified, in writing, of any act on the part of the contractor which may involve loss for which the surety is responsible; that such notice shall be given by registered letter, directed to said Clemens & O'Brien, immediately after the occurrence of such act shall have come to the knowledge of the respondent. It is contended that knowledge of the contractor's failure to meet the payments due for labor and material came to respondent, and that he did not immediately notify appellant as provided in the bond. We think the evidence satisfactorily shows that respondent was not advised of the contractor's probable default until he was notified by Calhoun, Denny & Ewing, appellant's own agents in Seattle, that they desired that the payments under the contract should thereafter be made to them instead of to the contractor; even then it was stated to respondent by these agents of appellant that they did not think any difficulty would arise about the payments, but, as a matter of precaution, they desired respondent to make his payments to them so they could disburse the money. The contractor joined in the request for respondent to so make his payments, and this course was pursued from some time early in August until about the first of the following October, when the said agents notified respondent that they refused to receive and disburse any further payments. The contract in terms called for the completion of the work August 15, but it was not so completed, and the work was continued and the payments made in the manner aforesaid after that time.

It is contended by appellant that no authority is shown from it to Calhoun, Denny & Ewing, the agents in Seattle, to receive and disburse the money as was done. It is not disputed, however, that Clemens & O'Bryan, the general agents in Portland, had the power to authorize such a

course, and we are satisfied from the evidence that they were advised from time to time, by the Seattle agents, as to what was being done, and that they acquiesced therein. Thus the probable default of the contractor was brought home to appellant, so that it had actual knowledge thereof, and not only that, but it approved and adopted what it deemed to be a good course in view of such knowledge. Even if respondent had actually known of the contractor's probable default, it was not necessary that the formal notice specified in the bond should be given when appellant already knew the fact, and was acting upon its knowledge for its own protection. Moreover, as we have said, we do not think it appears that respondent had any intimation of the probable default in payments until he received it from appellant's agents, and he was even then misled by their remark that they thought no difficulty would arise. As we understand the record, the said Seattle agents were the only representatives of appellant in the state of Washington, and, under the circumstances we have detailed, together with the evidence before us concerning the knowledge of the general agents as to what was being done, and as to their directions in the premises, we think the Seattle agents acted by authority of appellant. The court, therefore, did not err in admitting the criticized evidence, and in holding thereunder that the acts of the Seattle agents were by authority of appellant, and amounted to a waiver of the necessity for the formal notice of failure to pay claims against the property. That the acts of appellant's agents in the premises amounted to a waiver is sustained by the following authorities: 13 Am. & Eng. Enc. Law (2d ed.), p. 345; *Cushing v. Williamsburg City Fire Ins. Co.,* 4 Wash. 538, 30 Pac. 736; *Home Ins. etc. Co. v. Myer,* 93 Ill. 271; *Harris v. Phoenix Ins Co.,* 85 Ia. 238, 52 N. W. 128; *German Fire Ins. Co. v. Stewart,* 13 Ind. App. 627, 42 N. E. 286; *Rokes v. Amazon Ins. Co.,* 51 Md. 512, 34

Am. Rep. 323.   In the last cited case the court, when speaking of the subject of waiver, said:

"Nor is it necessary to prove an express agreement to waive. On the contrary it may be inferred from the acts and conduct of the insurer inconsistent with an intention to insist upon a strict performance of the condition."

See, also, *Ovington v. Aetna Indemnity Co., ante* p. 473, 78 Pac. 1021.

What is said above applies also to the necessity for formal notice of failure to complete the building at the contract time. The evidence shows that, when that time arrived, the work was still in progress, and both the contractor and appellant, through its said agents, were working in harmony in the endeavor to hasten the completion and close the contract without loss. To that end they were then both directing the respondent as to how he should make his payments under the contract, and this course was continued for some time thereafter, as we have seen. Respondent might have complained of the failure to complete the building on time, but he waived the default, and the conduct of appellant, in its subsequent supervision and receipt and disbursement of accruing payments under the contract, shows that it, also, waived the default, and impliedly, at least, consented to an extention of the time. Moreover this record discloses no attempt to show that appellant was damaged by the contractor's failure to complete the building on time. Often such an extention may result in actual benefit to the assured, and since no damage is shown to have resulted from it in this instance, it is not ground for release of a compensated surety, within the decision in *Cowles v. United States, etc.,* 32 Wash. 120, 72 Pac. 1032.

What has been said applies to the futility of a formal notice of probable default in payment of labor and mate-

rial claims, when appellant was already advised of the fact and was acting thereon, even if it be conceded that respondent was in possession of the same knowledge. The court, however, found as a fact that respondent gave appellant full written notice in the premises, in all respects as required by the bond, immediately after the occurrence of the acts of the contractor which might involve loss to the appellant became known to respondent or his agent. We think the finding was justified by the evidence and we shall not disturb it. It is true, as a matter of common experience it might be supposed that respondent's suspicions would at least have been aroused when the appellant itself, through its agents, requested him to make contract payments to them, and not to the contractor direct. But it will be remembered that he was, at the same time, told that no trouble was apprehended by appellant, and that the course was adopted as a mere matter of precaution. The evidence does not disclose additional direct knowledge on the part of respondent until he was notified by appellant's agents that they refused to receive and disburse further payments. The written notice was given immediately thereafter, in compliance with the strict terms of the bond. Thus the court seems to have decided the case upon the theory that the necessary notice was actually given, and not upon the theory that the notice was waived, but inasmuch as the record contains much evidence bearing upon the subject of waiver, and since appellant argues the case as if the matter of waiver entered into the court's decision, we have hereinbefore discussed that subject.

The appellant also assigns as error that the court refused the introduction of evidence as to the value of the claims which were satisfied by respondent, and also refused to permit appellant to show that certain of the claims reduced to judgment were neither binding nor valid against respond-

ent's property.  This point was decided against appellant's contention in *Friend v. Ralston,* 35 Wash. 432, 77 Pac. 794.  It was there held that, when the surety has had due notice of the pendency of the lien suits, and has been tendered the defense thereof, it is estopped from asserting that the judgments are not correct in the absence of a showing that they were obtained by fraud or collusion and not in good faith.  No such showing is made here.  The evidence shows that appellant was duly notified of the pendency of the lien suits, and was tendered the defense thereof, but that it declined to participate therein.

Appellant does not directly assign that the court erred in holding that this suit was brought within six months of the first breach of the contract as provided in the bond, but that subject was made an issue by the pleadings, and is probably involved in the assignment that the court erred in refusing a nonsuit.  The action was brought within six months of the time the work was to be completed, and was, therefore, within the contract time, as far as that breach of the contract was concerned.  Under the court's finding as to knowledge on the part of respondent of the breach by failure to pay labor and material claims, the action was also brought far within six months of the time respondent came into possession of such knowledge.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, ANDERS, and DUNBAR, JJ., concur.