JOHN MANLEY, Respondent, *v.* THE PRESIDENT AND DIREC-
TORS OF THE INSURANCE COMPANY OF NORTH AMERICA,
Appellants.

(GENERAL TERM, EIGHTH DISTRICT, MAY, 1869.)

A referee is now required, by Rule 32 of this court, to state the facts found
by him in his report.

The General Term will assume that a referee has so stated all the facts
found by him affirmatively, and that he negatives those facts litigated on
the trial, upon which his report is silent;

And on appeal from a judgment entered on the report of a referee, will
review the questions of fact upon the evidence, and affirm or reverse the
referee's decisions thereon, whether express, or implied from the silence
of his report.

The remedy, in this court, to secure the performance of his duty by a referee,
is by motion. If important, for a proper review, that his findings of fact
shall be more ample, the proper practice is a motion to recommit the
report with directions to find how the fact was upon the evidence.

The suggestion in *Grant* v. *Morse* (22 N. Y., 323), that this court would per-
haps grant a new trial for a referee's refusal, in settling the case, to find
upon all the issues, disapproved.

The practice, in bringing questions for review, before the General Term, on
appeals in this court stated. Per MARVIN, J.

The methods of providing for a review in this court, and in the Court of
Appeals, when the appeal is from a judgment entered upon a referee's
report, stated and distinguished. Id.

M. having possession of lands, under a contract for their purchase from C.,
effected an insurance on the buildings thereupon, and, after they were in
part destroyed by fire, directed the insurer to pay the loss to C., and at the
same time assigned to C. the policy; the insurer refused to approve of the
assignment, because it included the insurance upon the buildings destroyed;
the assignment then being amended, by consent of parties, to meet the
insurer's objection, the latter, reciting that C. had purchased the property,
indorsed an approval.—*Held*, there was no breach of a condition not to
assign without the insurer's approval.

It may be inferred, under such circumstances, that the assignment was
made to take effect on the insurer's approval.

An assignment so made does not violate a condition which requires that
the consent of the insurer shall precede the assignment.

A transfer by the assured of a portion of the thing insured, does not avoid
the policy as to his remaining interest.

The decisions in *Tillou* v. *The Kingston Mut. Ins. Co.* (1 Seld., 405) and

*Murdock* v. *The Chenango Co. Mut. Ins. Co.* (2 Coms. 210), explained, and the difference in practice, in like cases, at the time of those decisions and under the Code, pointed out. Per MARVIN, J.

APPEAL from judgment upon the decision and report of a referee..

The defendant issued to the plaintiff a policy, August 31, 1866, whereby it insured the plaintiff against loss or damage by fire to the amount of $5,000 ; $3,500 on his frame house, and $1,500 on his three barns, being $500 on each barn, for the period of three years.

November 4, 1867, the house and one of the barns were destroyed by fire, and one of the barns damaged to the amount of $100. This action was brought to recover these losses.

A further statement of the case, and the questions made, appears in the opinion.

*Henderson & Wentworth,* for plaintiff.

*Wilkes Angel,* for defendant.

Present—MARVIN, LAMONT and BARKER, JJ.

By the court—MARVIN, P. J.   The referee found the issuing of the policy, and the loss while the policy was in full force ; that the house and barn destroyed were of the value of $4,000, and upward ; that the damage to another barn was $100 ; that the plaintiff gave due notice to the defendant of the fire, with proof of the loss and damage occasioned thereby, and as a matter of law he decided that the plaintiff was entitled to recover $4,100, and interest $263.10.

The defendant filed several exceptions, some of which will be noticed hereafter.

At the close of the evidence the defendant's counsel requested the referee to find and decide, as matter of law, certain propositions ; and the referee refusing so to find and decide, the counsel excepted. Some of these will be hereafter noticed.

The counsel for the plaintiff has constructed his brief and made his argument upon the theory that no questions of fact are presented for review except those found by the referee; and that no question of law can be raised except upon the facts found, and upon the admission and rejection of evidence during the trial, and on the motion for a nonsuit. This position of the counsel is erroneous. He cites *Grant* v. *Morse* (22 N. Y. R., 323), *Phelps* v. *McDonald* (26 N. Y. R., 82). These cases relate to the jurisdiction of, and practice in the Court of Appeals, where questions of *law only* are reviewed. The jurisdiction of this court is more extended. "An appeal upon the law may be taken to the General Term from a judgment entered upon the report of referees or the direction of a single judge of the same court, in all cases, and upon the *fact when the trial is by the court or referees*." (Code, § 348; see also §§ 267, 268, relating to trial by the court.) Upon an appeal from the judgment, when the trial has been by the court, the questions of *law* or *fact*, or *both*, may be reviewed by the General Term.

The review is in the same manner, embracing questions of law and fact, when the appeal to the General Term is from a judgment entered upon the trial by referees. (Code, § 272.) If a party desires a review upon the evidence appearing on the trial, either of the questions of fact or of law, he may make a case or exceptions in like manner as upon a trial by jury. (§ 268.) When the trial is by jury, exceptions may be taken and stated in a case or separately, with so much of the evidence as may be material to the questions to be raised.

If the evidence necessary to show the pertinency of the exceptions only is stated, the case or exceptions is a simple substitute for the old bill of exceptions. But the case may contain all the evidence and the exceptions, and upon a motion in such case, at Special Term, for a new trial, the exceptions and the evidence are before the court for review, and a new trial may be granted upon the exceptions or upon the ground that the verdict is against evidence, and an appeal

lies to the General Term from the decision of the Special Term. (Code, §§ 264, 349.) If the party does not complain of the verdict, the case should only contain the exceptions with so much of the evidence as may be material to raise the questions presented by the exceptions. (Code, § 264, Rule 36.)

Upon an appeal to the General Term, *from the judgment*, questions of law, raised by the exceptions only, are examined, as we have seen by a reference to § 348. The facts are only reviewable by the General Term in appeals *from judgments*, " when the trial is by the court or referees."

Referees, are required to " state the facts found and the conclusions of law separately." (Code, § 272.)

In *Johnson* v. *Whitlock* (3 Kern., 344), Judge COMSTOCK considered this provision of the Code, and came to the conclusion that the referee was not required, in his report, to state the facts found by him, but that the findings of fact might be omitted until a case should be made. Although it would not, I think, be difficult to show, from an examination of the Code, keeping in mind the history of the amendments made from time to time to §§ 267, 268 and 272, that the learned judge fell into error, and that, in truth, it was never intended to relieve the referee from the duty of stating in his report the facts found by him, it is quite unnecessary to make the examination, as the Supreme Court, soon after the decision in the Court of Appeals, enacted a rule that, " upon a trial by referees they shall, in their decision and final report, state the facts found by them and their conclusions of law separately; a copy of which shall be served with notice of the judgment." (See Rule 32, of 1858.) The language of this rule is clear. The referee is required in his report to state the facts found by him. In the present case, the report of the referee states some facts found by him, but omits to notice certain other questions litigated on the trial, and the defendant complains of such omission. It would have been more satisfactory if the referee had found directly upon the question whether the risk had been increased by a change

in the mode of occupying the house; also, whether the assured had sold or transferred the property insured; or had assigned the policy, &c.   These questions were litigated upon the trial, and are made and presented here, and, as I have already said, they are before us for review, and we have no difficulty in considering them, and making a proper disposition of the case by affirming or reversing the judgment.   As the language of the Code is that the referee "must state the facts found," and the rule is to the same effect, the court, in reviewing the evidence and the report, assumes that the referee has stated all the material facts which he found, affirmatively, and as to other questions upon which evidence was given, he was unable to find the facts as claimed by the unsuccessful party; in other words, he negatived them.   He is required to state only the facts he finds, and if he says nothing upon a question litigated on the trial, the implication fairly is, that he did not believe the fact to be as the party trying to establish it claimed it to be; and such omission to notice the question in the report, is equivalent to a finding against the party.   As the case contains the testimony, the question is presented to this court and examined precisely as though the referee had expressly found the fact against the party complaining.   The question will then be, is such finding (express or implied, as the case may be,) against evidence.   In this way the rights of the appellant are preserved, and it will hardly be necessary to send the case back to the referee. Cases, however, do occur where it is important, for an intelligent and proper review, that the findings of fact upon the issues or questions litigated, should be more ample than they are in the report; and in such cases the proper practice is a motion that the report be recommitted to the referee with directions that he find how the fact upon the evidence was. Such motions have been occasionally made and granted, though it is rarely necessary for the protection of the rights of the parties upon an appeal to this court.

In this case some requests were made by the counsel for defendant that the referee should *find* and *decide*, as matter

of law, certain propositions. The referee refused, and he excepted.

The counsel was unfortunate in the form of these requests. He probably intended to request the referee to find the fact or facts indicated, and then, upon such fact or facts, that the referee should decide the law as requested. It is, undoubtedly, very proper, in many cases, that counsel should call the attention of the referee to the evidence, and request him to find a particular fact. If, however, the referee refuses, this is not a matter for exception. It is proper, sometimes, the facts being proven, to request the referee to decide in the manner indicated. In this way the attention of the referee is directed to the particular proposition of the counsel. It is, however, rarely necessary, so far as a review in this court is concerned; as by the Code and rule, the referee is to report the facts found by him, and the conclusions of law separately. It will be well, before dismissing these questions of practice, to refer to *Grant* v. *Morse* (22 N. Y. R., 323), (and there are some other cases) where, in the opinion, some remarks are made as to the proper practice. As I have already stated, the Court of Appeals examines questions of law only. For the purposes of a review in that court, the question of law must be distinctly raised; and if it arises from the evidence, the fact which the evidence proves, or tends to prove, must be distinctly found. "The party appealing must make his case, and have it settled, with such a statement of facts as will show necessarily that the law is in his favor. If he does not, every intendment, not absolutely unreasonable in itself, will be against him." The learned judge, after remarking upon the practice in settling the case, says : "It was their (appellant's) privilege in procuring the referee to settle it, to require him to find upon all the issues, one way or the other. If he refused so to do, no doubt the Supreme Court would have granted a new trial for that very reason; or if not, then an exception to such a refusal might perhaps have been available in this court." These remarks were not necessary to the decision of the case,

and I have quoted them for the purpose of saying that I think the suggestion that the Supreme Court would grant a new trial in case the referee should refuse, in settling the case, to find upon all the issues one way or the other, must have been made without such consideration as that learned judge usually bestowed upon cases examined by him. The remedy, in the Supreme Court, when the referee refuses to perform his duty, is by motion to the court for an order requiring him to act and to perform his duty. The case must be put in a proper condition for review in this court. If a party complains that the case has not been settled properly, in accordance with the practice, the remedy is a motion that it be resettled. It will be seen by consulting the cases in the Court of Appeals, *supra*, that a mode of preparing and settling cases tried by a referee was indicated, dispensing with the finding of facts by the referee in his report, and the preparation of those facts by the party making the case, subject to proposed amendments, and to a settlement by the referee. It has not been my intention, in anything I have said, to unsettle or disturb the general system thus indicated; but I have called attention to the rule adopted by the Supreme Court requiring the referee to state the facts found by him in his report. The great point with the Court of Appeals was, that the case settled by the referee should *contain* the findings of fact. The practice was here made to conform to the suggestions or requirements of the Court of Appeals, so that now the party appealing prepares a case, and in that case he inserts the findings of fact by the referee, and if satisfied with such findings, or if the findings of fact cover all the issues and questions litigated, then he does not propose the finding of any additional facts. If he thinks the issues are not all passed upon, he may, as I understand, propose the finding of additional facts; and so also as to the other party in proposing amendments. In this way the case will be in a condition to be reviewed in the Court of Appeals. In the Supreme Court, however, as the testimony is before the court, and the court reviews as well the questions of fact

as of law, and applies the implication that as to all the ques-
tions upon which evidence was given, and as to which there
is no express finding, the referee found against the appellant,
or rather that he refused to find that the fact, as claimed, was
established by the evidence, there is no difficulty in review-
ing the case, though the referee has not found expressly upon
some of the questions litigated.

Proceeding to the case now before us, I am satisfied that it
can be reviewed in this court upon this appeal, and disposed
of in accordance with the rules of law and the rights of the
parties.

By one of the conditions of the policy, it was to become
void if the risk should be increased by any means whatever.
The defendant claimed that the risk was increased, and gave
evidence upon that question. Whether the risk was increased
was a question of fact; and as it does not appear from the
report that the referee has expressly found upon this question,
the implication is that he could not include it as one of the
facts found by him; that he negatived this claim; and the
question for this court is, was the evidence such as to require
the referee to find that the risk was increased? The insu-
rance was against loss or damage by fire on his (Manley's)
frame house and his three barns, situate on the farm known
as the Howe farm, Little Valley, N. Y. Nothing is said in
the policy or conditions touching the occupancy of the
buildings. It appeared from the evidence that at the time
the insurance was effected the dwelling-house was occupied
by Mrs. Howe and two children; by Rev. Mr. Scott, wife,
and two children; Alonzo Ames, wife, and child; Rev. Mr.
Willoughby; Mrs. Fay and daughter, and some others. That
such families occupied separate apartments of the house. This
was in August, 1866. Mr. Vashing, a witness for defendant,
testified that he lived in the house when it was burned, and
had from April previous; and that Welch moved in when he
did, and that they kept boarders; did not keep it as a general
boarding house; only boarded men at work for Welch; they
had some boarders the night of the fire; upon an average

had ten boarders. Welch was building the court house, and the boarders were at work for him; no fires were kept in the house for boarders; none in their rooms. I do not think that a finding that the risk had not been increased by the boarding of the mechanics at work upon the court house could be properly set aside.

It is declared by one of the conditions of the policy that if the assured shall assign the policy, either before or after a loss, without the consent of the company indorsed thereon, or shall sell or transfer the property insured, the policy shall be null and void. The defendant claims a breach of both of these conditions. The referee is silent upon these questions, except that he says: " *While the said policy was in full force*" the house, &c., were destroyed. The referee ought in fairness to have met these questions, and stated the facts, which he understood the evidence to prove.

The case shows that the interest of Manley in the property was that of a purchaser of the farm upon which the buildings were. He made the purchase of Chamberlain at $13,000; the contract bears date July 11th, 1866. Manley had made some payments and had possession. The fire was November 4th, 1867. The case contained a paper signed by Manley, and dated November 23d, directed to the defendant, in which Manley authorizes and requests that in the adjustment of his policy for loss, etc., the proceeds thereof be paid to Chamberlain. At the same time there was an indorsement on the back of the policy by which Manley transferred, assigned, and set over to Chamberlain all his right, title, and interest in the policy of insurance, and all benefit and advantage to be derived therefrom, on the two barns unburnt. The words " on the two barns unburnt" were not in the instrument when Manley executed it. The history is, the assignment was presented to the agent of the defendant for approval, and the agent refused to approve a general assignment, so far as the buildings burned were concerned, and the words restricting the assignment to the unburnt barns were then inserted, and the agent then reciting that Chamberlain had pur.-

chased the property, indorsed an approval of the assignment, dated December 14th. It may fairly be inferred that at the time the policy was assigned to Chamberlain, he and Manley contemplated obtaining the consent of the company to it, and application was made to the agent for such consent. It may be that the language of the condition requires that the consent of the company should precede the assignment. If, however, an assignment is made, not to be effective until the consent or approbation of the company is obtained, it will not be a breach of the condition. I think also that it is a perfect answer to this objection that the instrument was reformed with the assent of all the parties, and, as put in evidence upon the trial, the assignment was limited to the barns unburnt.

As to the alleged sale or transfer of the property insured, the evidence shows that Manley, by an instrument in writing, dated February 23d, 1867, sold and conveyed to Porter Welch one undivided half of his interest in the contract for the Howe farm. I regard this as a sale of the one undivided half of the property insured. No consent of the company was obtained. What effect had this sale and transfer upon the rights of the plaintiff? Did the plaintiff lose all right to recover anything? I think he did not. He can recover to the extent of his loss, assuming that he remained the owner of the undivided half of the property insured.

It is never necessary to insert in a policy of insurance the condition that it shall become void in case of a sale or transfer of the insured property without the consent of the company. Such is the legal effect in the absence of any condition. The contract of insurance is personal and is for indemnity, and if the assured has transferred the subject of the insurance before loss, he has no longer any interest in the property. A party obtaining insurance must have an insurable interest or the policy will be void from the beginning, and as the contract is one of indemnity, he must have an interest in the thing destroyed at the time it was destroyed, otherwise he has sustained no loss. These are elementary principles in the law of insurance.

In this case the question is not made that Manley had no insurable interest. He held the property under a contract by which Chamberlain agreed to sell and he agreed to purchase, and this gave him an insurable interest. See *Ætna Fire Ins. Co.* v. *Tyler* (16 Wend., 385). Chancellor WALWORTH, in this case, says: "If the assured sells the property and parts with all his interest therein before the loss happens, there is an end of the policy, unless it was assigned to the purchaser with the assent of the company; or if he retains but a partial interest in the property, it will only protect such insurable interest as he had in the property at the time of the loss." (Page 397.)

The counsel for the defendant cited in his brief *Tillou* v. *The Kingston Mut. Ins. Co.* (1 Seld., 405). The policy was issued to the three plaintiffs, who were partners; they assigned it to one Ketchum as security, with the consent of the company, and, after this, one of the partners sold and transferred his interest in the insured property to his copartners.

In the Court of Appeals, FOOT, J., said: "The case of *Murdock* v. *The Chenango Co. Mut. In. Co.* (2 Coms., 210), is decisive against the claim of the respondents to recover in this action for their own benefit." The opinion then proceeds to show that a recovery was proper for the benefit of the assignee, Ketchum, to the amount of his interest.

The case referred to in Comstock was this: Two tenants in common were insured, and one of them, before the loss, conveyed his interest in the premises to the other, and it was held that they could not maintain a joint action upon the policy. The reason for this decision will readily occur to all well informed as to the rules touching the parties to actions at law. As one of the plaintiffs had divested himself of any interest, he had no cause of complaint; as to him the policy was void. As the contract was with the two jointly, and as it was a rule that all joint contractors, if living, must be joined in the action, the action could not be maintained in case one of the joint contractors, obligees or promisees had released the cause of action. The action was gone as to all

of them.   These rules were not so dangerous and destructive to men's rights as we should naturally suppose, as there were other rules which rendered the cases rare in which the rule extinguishing the action would apply.   Choses in action were not assignable, so as to permit the assignee to sue in his own name.   If the cause of action was assigned, the action could be maintained in the name of the parties to the contract for the benefit of the assignee.   But if one of two, or more, to whom a contract was made jointly, released the cause of action, before it had been assigned, it was gone as to all.   By the insurance law, when the assured sold the thing insured, the contract as to him was void ; there was no longer any contract with him, and he could not be a party to the action. In the case in Selden, *supra,* he was permitted to be a party because he sold and transferred his interest after the assignment, and the law would not permit the assignee to be prejudiced thereby.   It will at once be seen that these cases, and the principles upon which they were decided, have no application to the case we are considering.   The contract in this case was with Manley alone.   He transferred a portion of his interest in the property, and as to that portion he ceased to have any right.

Before taking leave of Murdoch's case, I think I may be pardoned for suggesting that probably no such decision would now be made, after considering the really valuable reforms made by the Code touching parties to actions, and the rendition of judgments.   The case was decided in the Court of Appeals, in 1849, under the old system, and without any reference to the Code.   Now, by the Code, it is no objection to a recovery that too many persons have been made plaintiffs. If one of the plaintiffs proves a good cause of action, he is entitled to judgment; and as a sale by one of two or more persons jointly insured renders the policy *void* as to him, because he has ceased to have any interest in the property ; it should be held that the contract remained good as a contract solely with those who remained owners at the time of the loss.   It was not indeed decided in Murdoch's case

that the action could not have been maintained by the plaintiff, who had not transferred his interest, and that he could not recover to the extent of his share of the loss. (See *Hoffman & Place* v. *Ætna Fire Ins. Co.*, 32 N. Y. R., 405, and cases cited.) In the present case Manley was entitled to recover the amount of his loss, not exceeding the amount of the risk taken. The risk taken upon the house was $3,500, and upon each of the barns $500. The evidence showed that the house was worth from $8,000 to $10,000, and the barn destroyed $1,500. Half of each of these sums exceeds the amount of the risk taken, and the amount recovered. There is in this regard no error in the judgment.

It is not necessary, in the view I have taken, to consider the question of waiver by the company of any objection to the sale by Manley of half of his interest in the contract to Welch. The counsel made an oral point on the argument that the preliminary proofs do not show who were the respective owners at the time of the loss, as required by the policy. It appears from the case that it was admitted on the trial that the proofs required by the policy were made and delivered to the agent; besides, I think they were sufficient.

The judgment should be affirmed.