COE S. BUCHANAN, Respondent, *v.* THE EXCHANGE FIRE INSURANCE COMPANY, Appellant.

A policy of fire insurance upon a paper mill and machinery contained a clause prohibiting the storing or use on the premises of " petroleum, rock or earth oil; " another clause provided for cases where buildings used for purposes of trade were lighted by certain specified inflammable fluids (not including kerosene). In an action upon the policy, it appeared that kerosene was used for lighting the mill, and that at the time of the fire there were about forty gallons in the mill (which was a reasonable quantity) provided for that purpose. *Held*, that the term " rock and earth oil " included kerosene, but that its use for lighting was not intended to be prohibited; that, there being a clause upon the subject of lighting, by the prohibition in the first clause other use was intended to be provided against; and that, therefore, the use of kerosene for lighting, and the keeping on hand of a reasonable quantity for that purpose, did not vitiate the policy.

The policy also contained a provision that it should become void in case of a sale or conveyance of the insured property, or an assignment of the policy without the consent, in writing, of the company. *Held*, that a consent given after a sale of the property and assignment of the policy was effectual to preserve it in force and save the forfeiture.

The insured, upon sale of the property to plaintiff, executed an assign-

ment of the policy to him, and a former agent of defendant (the insurer), whose authority had been revoked, subscribed a memorandum, written on the policy, as follows: " This policy to inure to the benefit of C. S. B " (plaintiff). Defendant's secretary thereafter, upon being advised of the sale and shown the policy, stated that the assignment and consent were all right. *Held,* that the form of the memorandum was sufficient to show consent; that the act of the secretary, whether considered as a ratification or a consent then given, bound the company.

Also, *held,* that the word " machinery," as used in the policy, included not only the machines, but the tools and implements used therewith for the manufacture of paper.

· (Argued May 13, 1874; decided September term, 1874.)

· APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff entered upon the verdict of a jury.

This action was upon a policy of fire insurance. The policy was issued to Addison Weeks through defendant's agent at Albany (A. T. Holmes), November 14, 1868. About February 20, 1869, Weeks sold out his interest in the insured property to the plaintiff. February twenty-second he assigned all his interest in the policy to the plaintiff. The questions raised and the evidence so far as important are set forth sufficiently in the opinion.

*C. Frost* for the appellant. The sale of the premises rendered the policy void.. (*Smith* v. *Sar. Co. Mut. F. Ins. Co.,* 3 Hill, 508; *Bigler* v. *N. Y. C. Ins. Co.,* 22 N. Y., 406.) The policy was not revived by the consent of Holmes indorsed on the back. (*Stringham* v. *St. N. Ins. Co.,* 37 How. Pr., 365; 3 Keyes, 280, 376; *Bk. of U. S.* v. *Davis,* 2 Hill, 451; *Jeffrey* v. *Bigelow,* 13 Wend., 518; *Sutton* v. *Dillaye,* 3 Barb., 529; *Miller* v. *Hackley,* 5 J. R., 375; *Gilbert* v. *Phœnix Ins. Co.,* 35 Barb., 372; *Hill* v. *Mech. Mut. F. Ins. Co.,* 6 Gray, 169.) Notice to Vanderpoel of the revocation of the agency was notice to Weeks. (Story on Ag. [ed. 1869], § 140; *Le Neve* v. *Le Neve,* 1 Ves., 64; *Bk.*

of *U. S.* v. *Davis*, 2 Hill, 451; *Jeffrey* v. *Bigelow*, 13 Wend., 518; *Sutton* v. *Dillaye*, 3 Barb., 529.)

*Thomas M. North* for the respondent. The memorandum signed by Holmes was a consent both to the sale of the property and the assignment of the policy. (*Potter* v. *O. and L. Mut. Ins. Co.*, 5 Hill, 149; *Hooper* v. *H. R. F. Ins. Co.*, 17 N. Y. 424.) The subsequent ratification by defendant was equivalent to an original authority. (*Com. Bk. of Buff.* v. *Warren*, 15 N. Y., 577; *Keeler* v. *Salisbury*, 33 id., 648; *Durrar* v. *Hud. Co. Ins. Co.*, 4 Zab., 171; *Beal* v. *Park F. Ins. Co.*, 16 Wis., 241, 523; *Buckley* v. *Garrett*, 47 Penn. St., 205; *Canfield* v. *Westcott*, 5 Cow., 270; *Shearman* v. *Nia. Ins. Co.*, 46 N. Y., 526; *Manley* v. *Ins. Co. of N. Am.*, 1 Lans., 20; *Hyatt* v. *Wait*, 37 Barb., 29; *Wilson* v. *Hill*, 3 Metc., 66; *Foster* v. *Eq. Ins. Co.*, 3 Gray, 219; Flanders on F. Ins., 371, § 18; *Pratt* v. *N. Y. C. Ins Co.*, 64 Barb., 590; *Fish* v. *Cottenet*, 44 N. Y., 538; *Ellis* v. *Alb. City F. Ins. Co.*, 50 id., 405; *Carroll* v. *Char. Oak Ins. Co.*, 10 Abb. [N. S.], 166; *Frost* v. *Sar. Co. Mut. Ins. Co.*, 5 Den., 154; *Dezell* v. *Odell*, 3 Hill, 225.) The policy was not avoided by the use of kerosene for lights. (*N. Y. Eq. Ins. Co.* v. *Langdon*, 1 Hall, 226; S. C., aff'd, 6 Wend., 623; *O'Neil* v. *Buffalo Ins. Co.*, 3 N. Y., 122; *Lounsberry* v. *Protective Ins. Co.*, 8 Conn., 439; *Hynds* v. *Sch. Co. Ins. Co.*, 16 Barb., 119; S. C., aff'd, 11 N. Y., 534; *Harper* v. *Alb. Mut. Ins. Co.*, 17 id., 194; *Hoffman* v. *Ætna Ins. Co.*, 32 id., 405; *Wood* v. *N. W. Ins. Co.*, 46 N. Y., 421.)

EARL, C. The insurance was on stock of material for manufacturing paper and on paper manufactured and in process of manufacture, and on machinery contained in a paper mill at West Milton, Saratoga county.

The policy contained a provision that petroleum, rock, and earth oils, benzine, benzole and naphtha, should not be stored or used on the premises without written permission indorsed on the policy, and that refined coal, carbon, and kerosene oils

when stored in less quantities than ten barrels, shall be classed as extra hazardous.

The paper mill was lighted by kerosene, and at the time of the fire there were in the mill about forty gallons of kerosene, provided for lighting the mill. The quantity was reasonable for the use for which it was provided. This kerosene was not stored within the meaning of the policy, and hence there can be no claim that the provision against storing was violated. But it was used, and the question is whether its use for lighting violated and avoided the policy. I am inclined to think that the prohibition of the use of rock and earth oils upon the premises includes kerosene. Kerosene is not petroleum. It is made from the latter by a process of distillation and refinement. But it is a rock or earth oil. If it is not I am unable to classify it. But I do not think that its use for lighting was intended to be prohibited; other use was intended. Kerosene is considered reasonably safe for lighting, and is in ordinary and general use for lighting buildings in all parts of the country outside of cities where gas is used, and the policy must have been made in reference to this well known fact. There is another clause in the policy which covers the subject of lighting, which provides that " camphene, spirit gas or burning fluid, phosgene or any other inflammable liquid, when used in stores, warehouses, shops or manufactories as a light, subject the goods therein to an additional charge, and permission for such use must be indorsed in writing on the policy, otherwise the insurance shall be void." It will be seen that even the articles named are not prohibited for lighting in all cases. They could be used without violating the policy for lighting dwelling-houses. Kerosene is not named and if it had been intended to prohibit its use for lighting, as it is used for that purpose more than all the other substances mentioned, it would have been named. It was proved that kerosene is not properly classified as an " inflammable liquid " and hence it is not prohibited under that name. Construing, therefore, the two clauses of the policy together, I am of opinion that kerosene for lighting was not prohibited.

There was also a provision in the policy that if the insured property should be sold or conveyed, or if the policy should be assigned without the consent of the company, obtained in writing, the policy should become null and void, and it is claimed that this provision was violated. The facts bearing upon this question are briefly these : Weeks executed to plaintiff a bill of sale of the property on the twentieth of February, and the inventory was completed, and possession was taken by the plaintiff on the twenty-second of February. Weeks promised to have the policy transferred the same evening, and, on the twenty-second of February, wrote on the back of the policy an assignment thereof to the plaintiff, and then sent the same, by a young man eighteen years of age, to A. T. Holmes, at Albany, who had, at some prior time, been the agent of the company who issued the policy to Weeks, and he subscribed a memorandum, which had been written upon the policy before it was presented to him, as follows : " This policy to enure to the benefit of C. S. Buchanan. A. T. Holmes, agent." The policy, in this condition, was returned to the plaintiff.

On the third day of March, the day before the fire, the plaintiff delivered the policy to his son, who, at his request, took the same to the office of the defendant, in the city of New York, and he there informed the secretary of defendant that his father was the owner of the property, delivered to him the policy, and asked him if the transfer and consent were all right, and he said they were. The young man who took the policy to Holmes did not inform him of the transfer of the property, neither did plaintiff's son inform defendant's secretary of the circumstances under which the consent had been obtained of Holmes. Holmes was, at one time, the agent of the defendant, and, I think, from the evidence, had, at that time, authority to effect insurances and consent to transfers of policies and property for it. But, on the 10th day of December, 1868, the defendant resolved to suspend all its agencies, including the Albany agency ; and, on the 22d of December, 1868, defendant's secretary, in obedience

to such resolution, wrote to Holmes, at Albany, informing him that the board of directors had passed resolutions suspending all agencies, and requested him not to underwrite for the company from that date, and to return all blanks, and send his account to date with his check to balance. December 24, 1868, Holmes returned all his blanks and papers, sent his account with his check to balance, expressing his sorrow that the company had passed resolutions to discontinue all agencies, and a wish that some other company might be recommended to him to take the place of defendant in his agency. Thereafter, so far as appears, Holmes did no further business for the defendant. When he signed the consent, in this case, he told the young man who brought it to him that it was not a legal transfer; that he was not the agent of the defendant, that his agency had ceased. The young man told him he wanted him to do it, because other companies had done it, and Holmes then signed it, saying that he must take the responsibility, that he would have nothing to do with it. Upon these facts, the judge, at the trial, held that Holmes had authority to give the assent; but the secretary of the defendant having denied the interview, in New York, between him and plaintiff's son, the judge submitted to the jury the following question: " Did the defendant assent to the written memorandum signed by Holmes, and indorsed on the policy?" And they answered it in the affirmative. Upon these facts, defendant's counsel claims that the policy having become void on the twentieth of February by the transfer of the property, could not after that be again restored to life except by a re-creation ; that Holmes had no authority to consent, and that what took place at the office in the city of New York, on the third day of March, did not constitute a ratification of Holmes' acts. I will now examine each of these claims separately.

The point that the policy was rendered void by the transfer before consent was given, and, hence that it could not be again vitalized by a mere consent to the transfer afterward given, was not specifically taken at the trial, and we might.

for that reason refuse to consider it here. It does not certainly appear that the title to the property passed to the plaintiff on the twentieth of February. The bill of sale was executed on that day, but the inventory was not completed, and possession was not taken by plaintiff until the twenty-second, the day the consent was given by Holmes. Upon the facts proved, the sale may not, therefore, have been complete until the latter day. Besides this, Weeks was to transfer the policy, and this was undoubtedly part of the contract of sale; and, until he had effectually done this, it may well be claimed that the sale was not fully executed. (*Manley* v. *Ins. Co. of N. A.*, 1 Lans., 20.) But, if we should hold that the transfer of title was made before the consent was given, the case of *Shearman* v. *Niagara Insurance Company* (46 N. Y., 526), would be an authority for holding that the policy was revived by a consent subsequently given. I am of opinion that, by the terms of the policy, a consent given subsequent to a transfer is just as effectual as one given before. The policy provides that other insurance, or a conveyance of the property, or assignment of the policy not assented to by the company, shall render the policy void. It is not provided that the assent shall be previously obtained, and there is nothing in the nature of the thing which requires that it should be previously given. The insurance company gets all the protection it seeks or needs if it shall not be held liable until its assent has been given. Hence, this particular point furnishes no obstacle to a recovery.

I think the judge erred in holding that Holmes had authority to give the assent. His entire agency had clearly been revoked. He so understood it, and had surrendered up all his papers and balanced his accounts. He informed the young man who obtained his assent that his agency had ceased, and that he had no authority to give it. This notice, at the very time he performed the act, to the young man who acted either for Weeks or the plaintiff (and it matters not which), was notice to his principal. (Story on Agency, § 140; *Bank of the U. S.* v. *Davis*, 2 Hill, 457; *Jeffrey* v. *Bigelow*,

13 Wend., 518; *Sutton* v. *Dillaye*, 3 Barb, 529.) But this error was harmless, as the judge submitted all the evidence upon the question of ratification of the act of Holmes by the secretary of the company to the jury, with proper instructions, and they found upon that question for the plaintiff. He instructed them, substantially, that if plaintiff's son called at the office of the company, and there informed the secretary that his father was the owner of the property, and delivered to him the policy and asked him if the transfer and the consent by Holmes were all right, and he replied that they were, there was a ratification. This instruction was clearly right. The secretary was one of the principal managing officers of the company; he was in its office in charge of its business; he could there issue policies and give consents which would bind the company; and he could bind the company by insurance and consent in writing or by parol. (*Fish* v. *Cottenet*, 44 N. Y., 538; *Ellis* v. *Albany City Fire Ins. Co.*, 50 id., 405.) He could authorize another to write the consent or he could do it himself. Hence, what took place in the office may be treated either as ratification of what Holmes had done, as an assumed agent, or as a consent then and there given. In either aspect the company was bound.

The form of the memorandum was sufficient to show consent to the assignment of the policy and transfer of the property. (*Potter* v. *O. and L. Mut. Ins. Co.*, 5 Hill, 149; *Hooper* v. *Hud. River F. Ins. Co.*, 17 N. Y., 424; *Shearman* v. *Niagara Ins. Co.*, *supra*.)

It follows from these views that the plaintiff held a valid policy; and his recovery must be upheld unless the judge erred at the trial, in his holding as to what constituted machinery. The insurance was in part upon the machinery in a paper mill. I think the word here was used in its most comprehensive sense, to include all the machinery and the tools and implements used therewith in the manufacture of paper.

The loss upon machinery, as claimed by the plaintiff in

his inventory, was $1,913.66. This was covered by insurance in this company for $500, and in two other companies, each for $500, making in all $1,500; which was upward of $400 less than the loss. Even if a few of the items contained in the inventory were not actually machinery, the value of such items was not $400; and hence the plaintiff was clearly entitled to recover the full amount of his insurance.

I am therefore of opinion that no error was committed upon the trial, and that the judgment should be affirmed, with costs.

All concur; Reynolds, C., not voting.

Judgment affirmed.