GEORGE MARK, RESPONDENT, *v.* THE NATIONAL FIRE INSURANCE COMPANY OF NEW YORK, APPELLANT.

*Policy of insurance — provision for arbitration — when not a condition precedent to the right of action — Kerosene not a "burning fluid or chemical oil" — Interest of the assured — when the policy is not annulled by a failure to state it.*

A policy of insurance provided, among other things, that if any difference should arise touching any loss or damage, the matter should, at the written request of either party, be submitted to impartial arbitrators, whose award, in writing, should be binding on the parties as to the amount of such loss or damage, but should not decide the liability of the company, and that no suit should be sustainable until after an award should have been obtained in the manner provided, nor unless it was commenced within twelve months after the loss should occur.

*Held,* as neither the number of arbitrators nor the manner of their appointment was specified, and as there was no way provided whereby their appointment could be procured nor their award obtained within the time limited for the bringing of the action; as in case no differences should arise as to the amount of loss (but only as to the liability of the company) no arbitration could be had, and consequently no suit could be sustained; that the clause could not be treated as a condition precedent, compliance with which was essential to the bringing of the action, but as merely an independent covenant, collateral to the agreement to pay.

In the absence of proof the court cannot hold that kerosene oil is a "burning fluid or chemical oil," as these words are used in a policy of insurance, forbidding their use in the insured premises.

A policy of insurance upon a boat was issued to "George Mark, Superintendent." The boat was owned in different shares by five persons, of whom Mark was one. He had been superintendent, and managed the boat for many years.

The agent of the company knew that Mark was not the sole owner of the boat when he issued the policy.

*Held,* that the policy was not avoided by the clause reciting that if the interest of the assured was other than the entire unincumbered interest, it must be so represented or the policy would be void.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

The action was brought upon a policy of insurance against fire, issued upon a ferry boat, the Dyer. The policy provided, among other things: "But provided, in case differences shall arise touching any loss or damage, after proof thereof has been received in due form, the matter shall, at the written request of either party, be submitted to impartial arbitrators, whose award, in writing, shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liability of the company under this policy. * * *

It is furthermore hereby expressly provided and mutually agreed, that no suit or action against this company for the recovery of any claim by virtue of this policy, shall be sustainable in any court of law or chancery, until after an award shall have been obtained fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced within twelve months next after the loss shall occur; and should any suit or action be commenced against this company after expiration of the aforesaid twelve months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

The fire occurred October 17, 1876.

After some delay plaintiff, on the 24th of May, 1877, requested that the company would arbitrate, and that arbitrators should be chosen in twenty days, and suggested that each party name one impartial arbitrator, and these two name a third. On the eleventh of July, defendant sent a notice that they agreed to arbitrate, and would name an arbitrator. On the twenty-first of July they named one. On the twenty-sixth of the same month plaintiff refused to accept the person named as impartial, on the ground that he was president of an insurance company. On the fourth of August the defendant refused to name any other, and this action was commenced in September.

On the trial, among other grounds, the defendant moved for a nonsuit, on the ground that no award had been obtained. The court refused, saying that neither side could select a man so as to obtain an unfair advantage; that if one party objected to an arbitrator named by the other, urging some ground which was cogent in his own mind, the party naming him had not a right to refuse to name another; had not a right to refuse to meet the terms of the policy, by procuring an impartial arbitrator.

*Matthew Hale,* for the appellant.

*R. A. & F. J. Parmenter,* for the respondent.

LEARNED, P. J.:

It is often said by courts that parties can make such contracts as they choose, and therefore must abide by them. This is good in theory but not in practice. Men cannot make such contracts as they please with insurance companies, but are obliged to accept such contracts as the companies draw up. The necessities of life almost require a prudent man to insure. And the State authorizes incorporations for that purpose. But for the terms of the contract the insured is at the mercy of the company. And policies are full of conditions, of which the insured knows nothing, until he suffers a loss. Such policies are very unlike the contract commented on in *Delaware and Hudson Canal Co.* v. *P. Coal Co.* (50 N. Y., 250). "It may be assumed that every provision  *  *  *  was inserted in words well chosen to give clear and distinct expression to the views of the parties."

Two classes of cases are often spoken of in this connection; the one where parties undertake, by an independent covenant to provide for arbitration; the other where they qualify the right of action by providing that, prior thereto, certain facts shall be determined. (Case last cited, p. 266.)

It is claimed by defendant that this case belongs to the latter class, and that the award is a condition precedent.

It seems to me that there are two reasons why this cannot be admitted. In the first place, no suit can be maintained after the lapse of twelve months, and it is out of the power of the plaintiff

to compel an award within that time. This contract limitation has often been held valid, and is now recognized in the new Code. Both parties may agree on arbitrators, and yet no award may be obtained within that time. It could not be said that the defendant had prevented the making of an award. And if the award is a condition precedent, it must be obtained. And, secondly, there is no right to an arbitration, unless differences arise as to the amount of loss or damage. If no such differences arise, there can be no award. If then the defendants agree on the amount of damages, but refuse to pay, then the plaintiff cannot arbitrate, because the amount of loss is not disputed; and he cannot sue, because he has not obtained an award. So that the defendants have only to agree on the amount of damages and then refuse to pay; and the plaintiff is effectually barred. The clause of the policy is general, that no suit or action shall be sustained until after an award shall have been obtained. And if the defendants insist on the strictness of this as a condition precedent; they must take it as it stands. (*Leach* v. *Neptune Fire Insurance Co.* (58 N. H. [cited 21 Alb. L. Jour., 97].)

And there is still a further reason why this clause should not have the strictness claimed by defendants, and that is, that it prescribes neither the number of the impartial arbitrators nor the manner of choosing them. In *Delaware and Hudson Canal Co.* v. *Pennsylvania Coal Co.* (*ut supra*) a definite arrangement for the appointment of arbitrators was agreed upon in the contract. So it was in the leading case of *Scott* v. *Avery* (5 H. of L., 811). The committee and the members (who were the two parties) were each to choose one. If the committee refused, the member was to choose two; and in either case, the two to choose a third. And so also in *Smith* v. *Brady* (17 N. Y., 173), and cases of a similar character, where work is to be done to the satisfaction of an architect. Thus, too, in *Dawson* v. *Fitzgerald* (L. R., 1 Exch. Div., 257) the agreement was, that each party should choose an arbitrator, and they two an umpire. And while it is not safe to make a positive assertion, it would seem that, in the cases where such a covenant has been held to create a condition precedent, the arbitrator has been named or the mode of appointment has been determined by the contract. So, at least, it ought to be.

It is not an answer to say that, in the present case, the parties

agreed on the number of arbitrators and the mode of choosing. For this action is not on any award actually made. But the defense is that the plaintiff was bound to procure an award. And the question is, from whom? Will it be enough if he himself selects two impartial arbitrators?

Without, therefore, examining the view taken by the learned justice who tried the case, we think that this clause should not be held to create a condition precedent; but to be collateral to the agreement to pay. (*Gibbs* v. *Cont. Ins. Co.*, 20 Sup. Co. N. Y., 611.)

It is urged by defendant that there was no proof of the amount of damages caused by the fire. But it was not disputed that the boat was burned; and it plainly appears that, at the time of burning, she sank, and that the cost of raising her was more than her value.

There was, therefore, some evidence, though not much, that, as the result of the fire, she was a total loss.

The defendant also objects to insufficiency in the proofs of loss. Such proofs were served December 8, 1876. Objections were made January thirty-first, and supplemental proofs were served March seventh. It does not appear that any objection was made to these supplemental proofs. (*Keeney* v. *Home Ins. Co.*, 71 N. Y., 396.)

It is further insisted in the answer that plaintiff used a burning fluid on the boat, in violation of the policy. The policy forbids the use of camphene, spirit gas, or any burning fluid or chemical oil. It was proved that kerosene was used. It was claimed by defendant that kerosene was a burning fluid or chemical oil. The defendant's witness stated that he did not know what chemical oil meant, and he stated how kerosene was made from petroleum. We cannot hold, aside from proofs, that kerosene comes under the words "burning fluid"; any more than it did under the words "inflammable fluid." (*Wood* v. *N. W. Ins. Co.*, 46 N. Y., 421.) "Burning fluid," in this position, cannot mean every fluid that will burn. Whale oil will burn. (See *Buchanan* v. *Exchange Ins. Co.* 61 N. Y., 26.)

The defendants insist that plaintiff should have been nonsuited, under the clause, that the policy should be void, if the risk should

be increased by means within the control of the assured. It appears that the Dyer was used as a ferry boat between Albany and Greenbush, and had been so used from July, 1875. It seems that, in August and September, 1876, she ran very little, if at all. In October, 1876, about the twelfth, she began to run in the place of the Mark, taken off for repairs, and ran a few days, and was then taken off. While tied up and not in actual use, she was ready for service, with water in her boiler and wood in her furnace, ready to run. It might well, therefore, be said that she was (within the language of the policy) running on the Hudson river. Nor is any proof given that the risk was increased, when she was thus tied up, over the risk when she was actually moving. She was not burned, while laid up for the winter. She was the consort of the Mark, and was used when necessity required, and was thus, in a fair sense, running.

An important question arises on the form of the policy. It was issued to "George Mark, Superintendent." In fact, the property belonged to several persons, five in number, who owned certain definite shares; Mark owning fourteen forty-eighths. Mark had, for many years, been superintendent, and had had charge of the boats.

Now, it is not claimed, in the answer, that there is any defect of parties plaintiff, or that the other owners of the property ought to have been joined with Mark in this action. That point, therefore, is out of the case. The only way in which the objection above stated is presented is under the common clause in the policy that, if the interest of the assured be any other than the entire unconditional, etc., it must be so represented, or the policy shall be void.

We have the fact in this case that the policy described Mark as superintendent. This word was a plain indication that he was not the absolute owner. It would lead anyone to understand that he was managing the property, and that he was taking the insurance for the benefit of others. In a contract of insurance, where there is good faith, the fair meaning of the parties should be carried out. The agents, also, who issued the policy, knew that Mark was not the sole owner. (*Van Schoick* v. *Niagara Fire,* 68 N. Y., 434.) Although they did not know the real facts, yet they knew that Mark was not the sole owner. The importance of their testimony, to a large extent, is to show that the word superintendent was

understood by them to mean that Mark was not absolute owner. If he was not, then the insurance must have been intended for the benefit of the owners; just as if a policy had been issued to a person describing him as agent. (*Clinton* v. *Hope Ins. Co.*, 45 N. Y., 454.)

If the foregoing views as to kerosene are correct, the evidence of Van Arnum, objected to, was immaterial.

It was claimed in the answer that the boat was unseaworthy for want of a competent master, crew and pilot. But so far as we see the policy is the ordinary policy against fire, such as is used for the insurance of houses. We do not discover that seaworthiness was a condition.

The refusal to charge that the plaintiff could recover only a sixth part of his interest was correct, under the views above stated, as to the meaning of the policy issued to plaintiff as superintendent.

We have examined the other questions touching admission and exclusion of evidence, and find no error.

Judgment affirmed, with costs.

Present — Learned, P. J., Boardman and Bockes, JJ.

Judgment affirmed, with costs.