CHICAGO SUGAR REFINING CO. *v.* AMERICAN STEAM-BOILER CO.

*(Circuit Court, N. D. Illinois.* November 23, 1891.)

1. INSURANCE—CONSTRUCTION OF POLICY—"EXPLOSION AND ACCIDENT."
   A policy of insurance upon a sugar refinery provided for indemnity against loss by "explosion and accident," and, by a condition on the back thereof, declared that the term "explosion" included only a "rupture of the shell or flues of the boiler or boilers, caused by the action of steam." *Held,* that where, in an attempt to extinguish a blaze originating in a starch kiln heated by steam-pipes, a cloud of starch dust was stirred up, which came in contact with the flame and exploded, this was an "accident," within the meaning of the policy, and the insurer was liable for damage to the property caused directly by the explosion, and by a fire which resulted therefrom, notwithstanding a further provision that no claim should be made for "any explosion or loss caused by the burning of the building," or "for any loss or damage by fire resulting from any cause whatever."

2. SAME—INSURANCE AGAINST LIABILITY FOR PERSONAL INJURIES.
   Under a clause insuring against "personal injury and loss of human life," for which the assured is liable in damages, and "which shall be caused by said boilers, or any machinery of whatever kind connected therewith and operated thereby," the insured could recover the amount it has paid out for loss of life and injuries caused by the explosion, since the kilns were heated by steam-pipes connected with the boilers.

At Law. Action by the Chicago Sugar Refining Company against the American Steam-Boiler Company, upon a policy of insurance. Jury waived, and trial by the court. Judgment for plaintiff.

*J. N. Jewett* and *Jewett Bros.*, for plaintiff.
*Gregory, Booth & Harlan*, for defendant.

GRESHAM, J. In consideration of the surrender of two unexpired policies and the payment of $450 in cash, the American Steam-Boiler Company, on October 18, 1889, insured the Chicago Sugar Refining Company, for 12 months, in a sum not exceeding $250,000,—

"Upon the 21 steam-boilers, and the 34 filters, tanks, converters, etc., on the premises occupied by the assured as a sugar refinery, situate in the city of Chicago, state of Illinois, and upon the steam-pipes, and the 9 engines, the shafting, belting, hangers, pulleys, and the two elevators connected therewith and operated thereby, against explosion and accident, and against loss or damage resulting therefrom to the property, real and personal, of the assured, and to all property of other persons for which the assured may be liable; and against accidental personal injury and loss of human life, for which injury or loss of life the assured may be liable to his employes, or to any other persons whomsoever, and which shall be caused by said boilers, or any machinery of whatever kind connected therewith and operated thereby."

So much of the third condition, or covenant, indorsed on the back of the policy, as need here be noticed, reads:

"That by the term 'explosion,' as used in this policy, is to be understood a sudden and substantial rupture of the shell or flues of the boiler or boilers caused by the action of steam, and no claim shall be made, under this policy, for any explosion or loss caused by the burning of the building or steamer containing the boiler or boilers, engines, elevators, or machinery, or for any loss or damage by fire resulting from any cause whatever."

The assured was engaged in the manufacture of starch and dextrine in two buildings, one of which, the mill-house, was 1 story high, 25 feet wide, and 40 feet long, and the other, the drying-house, was 2 stories high, 50 feet wide, and 200 feet long. The latter house contained two dextrine kilns in which prepared starch was exposed to steam heat in oven-like rooms, 8 feet high, 8 feet wide, and 18 feet long, bricked in on the sides and top, and closed in front by iron doors. A high degree of temperature is necessary in the manufacture of dextrine, to secure which steam-pipes connected with the boilers passed through the kilns. A fire, which was observed in one of the kilns while the factory was in operation, was extinguished by directing upon it a stream of water. The day following, the kiln was cleaned of the charred and wet mass, and the next day it was recharged with fresh starch. Late in the afternoon of the latter day, the foreman of the factory reported to the superintendent that a blaze was again observable in the same kiln, and the latter opened the door, and directed the contents of a Babcock fire extinguisher upon the fire. His efforts were apparently successful, but the flames soon developed further back in the kiln, and, in his endeavors to extinguish them, a cloud of starch dust was raised, which came in contact with the flames and exploded. The explosion extended through the open door of the kiln to the outer part of the buildings, resulting in the substantial destruction of a portion of the property insured, the buildings in which it was, and the death of a number of employes,

and the serious injury of many others. Proofs of loss and damage were seasonably made by the assured and tendered to the insurer, but it refused to recognize any liability under the policy. The assured thereupon assumed the responsibility of adjusting and paying the claims presented for death and personal injuries, and, in partial satisfaction of them, expended $21,392.86. It is agreed that the assured is still liable for $6,500 on unsettled death and personal injury claims. The wreck caught fire, and, in part, was consumed. The buildings were erected at a cost of $13,537.28; the machinery in them covered by the policy cost $17,239.39; and the stock in process of manufacture, at the time of the accident, was worth $2,737.78. There was salvage of $3,000 on the buildings, $6,035.50 on the machinery, and $961.95 on the stock, and the assured collected, on a fire policy covering the same property, $7,176.77; the amount realized from salvage and fire insurance being $17,174.22. The total loss, by reason of the accident, on the buildings, machinery, and stock, was $16,349.23, to recover which, and the $21,392.86, paid in settlement of claims for death and personal injuries, and $6,500, the amount of claims of the latter class, for which the assured is still liable, this suit was brought.

A statute was enacted by the legislature of New York in 1853, authorizing the formation of companies to issue policies "upon steam-boilers, against explosion, and against loss or damage to life or property resulting therefrom." The defendant was organized under that statute, and, while operating under it, issued the two policies which were surrendered. The statute was enlarged in 1889 by an amendment authorizing insurance "upon steam-boilers, and upon pipes and machinery connected therewith or operated thereby, against explosion and accident, and against loss or damage to life or property resulting therefrom." The policy in suit was issued after this enactment went into force. A demand doubtless existed for insurance affording greater protection to manufacturers, and it was to enable companies operating under the statute of 1853 to issue policies like the one in suit that the statute was amended. On its face it is for indemnity against explosion and accident, and loss or damage resulting therefrom to the property, real and personal, of the assured, and to all property of others for which the assured may be liable, and against accidental personal injury and loss of life for which the assured may be liable to its employes or to any other person, caused by the boilers, or any machinery of whatever kind connected with and operated by them. The word "explosion," as defined by the third condition, or covenant, on the back of the policy, means a sudden and substantial rupture of the flues of the boilers, caused by the action of steam. But neither that, nor any other condition, defines or in any wise restricts the ordinary meaning of the word "accident." That word, used as it is, in its usual sense, covers loss due to the breaking or injury of the machinery, and injury to the boilers not due to explosion. The explosion of the starch dust in the kiln, the force of which threw down the walls of the buildings and substantially destroyed the machinery, was as much an accident to it, within the meaning of

the policy, as if the walls had been demolished by an earthquake, or the force of the wind. If the defendant's construction of the policy is correct, it is not liable for any loss which is not due to an explosion of the flues of the boilers, caused by the action of steam, or a break of the machinery owing solely to its weakness, and not from external force. In other words, no explosion is an accident, and only loss due to an explosion of the boilers and the breaking of the machinery from its own weakness, and not from external violence, can be recovered. If, owing to the action of steam, a pipe had exploded, resulting in loss and liability to the assured, however great, the insurer would not have been liable; nor would it have been liable if an enemy had destroyed or injured the machinery and boilers by exploding dynamite or gunpowder under them. A fair reading of the policy does not justify this construction.

The third condition further provides that "no claim shall be made, under this policy, for any explosion or loss caused by the burning of the building or the steamer containing the boiler or boilers, engines, elevators, or machinery, or for any loss or damage by fire resulting from any cause whatever." It is urged by the defendant that even if the explosion of the starch dust was an accident, within the meaning of the policy, the loss sustained by the plaintiff was a fire loss. No property was consumed or damaged by fire until after the explosion, and no recovery is sought in this action for damage by fire to the wreck. That loss was adjusted and paid under a fire policy. The property insured was intact when the explosion occurred. The starch dust came in contact with the fire in the kiln, as already stated, and exploded, wrecking the machinery and buildings. A lighted lamp at the door of the kiln might have produced results no less disastrous, and it could have been urged, with equal propriety, that the loss was a fire loss. The policy was carefully prepared, executed, and delivered by the insurer to the assured, and it is a familiar rule of construction that, when the meaning of such instruments is uncertain or doubtful, they should be construed most strongly against the insurer.

The plaintiff is entitled to recover the amount it has paid in satisfaction of claims for deaths and personal injuries "caused by said boilers, or any machinery of whatever kind connected therewith and operated thereby." The kilns were heated by steam-pipes passing through them. These pipes were part of the machinery, and by means of them the kilns were connected with the boilers, and operated by them. Without the kilns, or something like them, connected with the machinery and co-operating with it, the plaintiff could not have operated its factory. It was while the machinery was in operation that the accident to it occurred, which resulted in the death of some of the employes, and the personal injury of others.

The ascertained, but unsatisfied, death and personal injury claims, amounting to $6,500, which I understand are to be treated as paid, the amount actually paid in satisfaction of claims of the same character, and the loss on the buildings, machinery, and stock, on account of the

accident, make a total of $44,241.09. Interest on this amount would be equal to depreciation in the value of the buildings and machinery, if there was depreciation, and interest is not allowed. Finding and judgment for the plaintiff for the amount above shown due.