AMERICAN POWDER COMPANY (a Massachusetts Corporation), Plaintiff, *v.* THE COMMONWEALTH INSURANCE COMPANY OF NEW YORK, Defendant.

Supreme Court, Trial Term, New York County, November 23, 1937.

*Goldstein & Goldstein* [*David Goldstein* and *Thomas Gold Frost* of counsel], for the plaintiff.

*Engelhard, Pitcher & Amann* [*Frederick C. Pitcher* and *Douglass M. Amann* of counsel], for the defendant.

COTILLO, J. The above-entitled action, and twenty others instituted in this and other courts, now duly consolidated herewith,

were brought in plaintiff's name, as the assured under various policies of insurance, to recover thereon for loss occurring at plaintiff's plant at Maynard, Mass., on February 7, 1931. At the time plaintiff was engaged in the production of nitrocellulose, a constituent of quick-drying lacquers. As part of its process it used an apparatus known as a digester, which was a cylindrical vessel about eight and one-half feet in diameter and twelve feet high, which, with its conical top and base and fittings, measured about twenty-five feet in overall height. It was composed of stainless steel plates, or sections, riveted together. The nitrocellulose was placed in the digester and subjected to heat and pressure to reduce its viscosity to the desired degree. This was obtained by steam, introduced into the sealed digester through pipes connected with a boiler in an adjacent building. This treating process required a temperature of 290 degrees Fahrenheit and a pressure of fifty pounds to the square inch inside the digester. It took from two and one-half to three hours to obtain this heat, which had to be maintained with the fifty-pound pressure for two to two and one-half hours. The digester was provided with two steam safety valves and with three " bleeder valves," the latter designed to release any gases formed during the operation. It was also equipped with steam and water gauges and thermometers and with a pump to keep the contents agitated.

About twelve-thirty A. M. on February 7, 1931, cellulose and water were pumped into one of the two digesters operated at plaintiff's plant, and heat and pressure applied by means of steam. Fifty pounds pressure was registered at four-twenty A. M., and an hour later the digester was destroyed " through excessive internal pressure, during the operation," which sheared off the bolts connecting the sections, driving the base into the concrete foundations and blowing off the top. The digester was wrecked and the building in which it was housed and other apparatus and property were damaged. The total loss resulting from the occurrence amounted to $49,013.26, which plaintiff seeks to recover herein, with interest.

The defendants herein had issued policies of insurance in effect on February 7, 1931, insuring plaintiff against " all direct loss or damage by explosion (excluding explosion originating within steam boilers, pipes, fly-wheels, engines and machinery connected therewith and operated thereby)." Such policies, by their terms, covered " All real and personal property, consisting principally of buildings, structures and their contents, constituting the assured's plants (known as Groups L, N and P on plan) occupied for manufacture of soluble cottons, and solutions and for purposes incidental thereto and/or not more hazardous situate at Acton, Middlesex

County, Massachusetts." Such policies provided, however, that they did not cover "loss to property otherwise specifically insured " nor " loss or damage covered under any fire or other kind of insurance."

At the time of the occurrence there was in force and effect a policy issued to plaintiff by the Fidelity and Casualty Company of New York, insuring it " against loss or damage caused * * * by an accident loss as defined herein to any object, described in any countersigned schedule attached hereto, provided such loss or damage is of the kind that is listed as covered in the Table of Insurance forming part of this policy." Accident is therein defined as " a sudden and accidental tearing asunder of the object or any part thereof caused by pressure of steam, air, gas, water or other liquid therein." The schedules attached and countersigned listed two digesters, eight and one-half feet by twenty-five feet, located at plaintiff's plant at Maynard. Plaintiff operated only two digesters, so there can be no doubt but that the Fidelity and Casualty policy referred to the digester that was blown apart on February 7, 1931.

Defendants assert, *first*, that their policies specifically exclude loss arising from explosion originating within steam boilers, pipes, fly-wheels, engines and machinery connected therewith and operated thereby, and that the loss herein sued for, if occasioned by an explosion, resulted from an explosion originating within machinery connected with and operated by a steam boiler. The evidence leaves no doubt but that the digester was torn asunder with great violence by excessive internal pressure originating within the digester itself, due either to excessive heat or pressure, or both, or to the formation of gases. That the digester falls within the classification of machinery is scarcely open to argument. The courts have so held with respect to steam pipes passing through a brick kiln to dry starch (*Chicago Sugar Refining Co.* v. *American Steam Boiler Co.*, 48 Fed. 198; revd., on other grounds, 57 id. 294), all apparatus used in a laundry (*Tubbs* v. *Mechanics' Ins. Co.*, 131 Iowa, 217; 108 N. W. 324), all tools and implements used in paper manufacture (*Buchanan* v. *Exchange Fire Ins. Co.*, 61 N. Y. 26), dies used to press out utensils (*Seavy* v. *Central Fire Ins. Co.*, 111 Mass. 540). In view of the definitions of machinery in these cases, it is not difficult to reach the conclusion that the digester as herein described constituted machinery connected with and operated by a steam boiler. Plaintiff's own witnesses refer to it as a " machine " or " machinery " which required steam for its operation. Defendants' policies specifically excluded losses occurring from explosions within any such apparatus as the digester, which must be classed as machinery connected with the steam boiler and whose operations depended thereon.

Defendants assert further that the digester was specifically covered by the Fidelity and Casualty policy, hence was not covered by defendant's policies. The latter policies covered " all real and personal property, consisting principally of buildings, structures and their contents." The Fidelity and Casualty policy explicitly enumerated and described two digesters, one of which unquestionably was the one which exploded. The total value of the property covered by defendant's policies was over $1,000,000. The Fidelity and Casualty policy, covering specific objects, was limited to $100,000. It follows that the digester was " otherwise specifically insured " within the meaning of the clause in defendant's policies excluding property specifically insured, and was not covered by their policies. The permission granted for other insurance does not nullify the clauses relied upon by defendant relating to specific insurance and losses covered by fire or other kind of insurance contract. (*O'Donnell* v. *Marine Transit Corp.*, 264 N. Y. 101; *Fairchild* v. *Liverpool & London F. & L. Ins. Co.*, 51 id. 65.)

While it has no bearing upon the first of the two propositions above discussed, it is not without importance to note in connection with the latter that this action is brought solely for the benefit and at the expense of the Fidelity and Casualty Company, which has advanced to plaintiff $39,165.70 of its loss and agreed to pay it the balance thereof if this action be decided in favor of defendants.

For the reasons above stated I find in favor of the defendants upon the merits.